UNITED STATES of America,
Plaintiff-Appellee,

v.

Luis Oscar SARMIENTO–PEREZ,
Defendant-Appellant.

No. 83–5389
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Feb. 6, 1984.

Rehearing and Rehearing En Banc
Denied April 2, 1984.

See also, 11th Cir., 667 F.2d 1239; 11th Cir., 633 F.2d 1092.

Arthur Addess, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Robert Dunlap, Asst. U.S. Atty., Miami, Fla., Patrick Coughlin, U.S. Dept. of Justice, Appellate Sect., Crim. Div., Washington, D.C., for plaintiff-appellee.

Before HILL, JOHNSON and HENDERSON, Circuit Judges.

PER CURIAM:

Appellant Luis Oscar Sarmiento-Perez appeals his convictions for distribution of cocaine and possession of cocaine with intent to distribute. He argues that the trial court committed reversible error when it admitted into evidence the cocaine allegedly seized from appellant's accomplices and contends that the evidence was insufficient to support his convictions.

The evidence at trial showed that Roberto Aguilar and Lauro Ybanez, along with two undercover DEA agents, were waiting in a Miami hotel room for a delivery of cocaine. Originally, the parties agreed to a sale of two kilograms of cocaine for $160,000. The undercover agents, however, only produced $100,000 at the hotel meeting so the parties agreed to a modified sale. After the original agreement was changed, Ybanez made a telephone call to arrange for the delivery of the cocaine.

A short time later, Ybanez received a phone call and Aguilar and Ybanez left the hotel room. Other DEA agents observed Aguilar and Ybanez rendezvous with a car driven by Sarmiento-Perez. Aguilar retrieved a small, light-colored box from the trunk of appellant's car and Aguilar and Ybanez returned to the hotel. The two men entered the hotel room where the DEA agents were waiting and presented the agents with a small box, described as a "Lady Schick box," containing two plastic bags with cocaine. The weight of the cocaine in the box matched the weight of the recently modified cocaine agreement.

Aguilar and Ybanez were arrested and the box and the two plastic bags containing the cocaine were seized and placed in a DEA safe. The evidence remained in the safe until a DEA agent removed the two plastic bags from the small box, placed the bags in an exhibit bag, and sent the sealed exhibit bag to a DEA laboratory for analysis. A DEA chemist received the sealed exhibit bag, removed the contents of the two plastic bags, and forwarded the two plastic bags for fingerprint analysis. After determining that the substance taken from

the two bags was cocaine, the chemist placed the cocaine into two new plastic bags and put those bags back into the heat-sealed exhibit bag that was introduced and admitted at trial as Government's Exhibit 1.

Following the arrest of Ybanez and Aguilar, law enforcement officers went to appellant's residence. The officers overheard appellant saying, "Tell the agent that he had been home all night and he was in bed, hadn't gone anywhere." A DEA agent then checked appellant's car and found the hood was still hot.

Appellant was also connected to the cocaine transaction by his admission to Brett Kimberlin, his cellmate. Kimberlin testified that appellant admitted his involvement in a drug transaction that appellant claimed to have gotten involved in as a favor for someone in his family. Kimberlin also testified that he vaguely remembered appellant telling him that the cocaine was in appellant's car or in the car's trunk.

■ Sarmiento-Perez maintains that this evidence failed to connect him with the cocaine and does not establish a sufficient chain of custody for the admission of the cocaine. His primary argument appears to be that because the prosecution failed to get the "Lady Schick box" or the plastic bags which contained cocaine admitted into evidence, the cocaine allegedly found in the box and bags could not be admitted. The connection of physical evidence with a defendant, however, may be shown by circumstantial evidence. *United States v. Hughes,* 658 F.2d 317, 320 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *United States v. Soto,* 591 F.2d 1091, 1099 (5th Cir.1979). Furthermore, the trial court exercises broad discretion over the admission of evidence and its determination will not be disturbed absent a clear showing of abuse of that discretion. *United States v. Dothard,* 666 F.2d 498, 501 (11th Cir.1982).

■ The failure of the government to have the box and the two bags admitted as evidence merely puts the case in the same posture as if the box and bag had never been presented at trial. It does not prevent the admission of the cocaine provided the government presents sufficient evidence from which a reasonable inference can be drawn that the cocaine seized by the agents and introduced at trial is connected to the defendant. *See United States v. Soto,* 591 F.2d at 1099–1100. Proof of the connection of physical evidence with a defendant goes to the weight of the evidence rather than its admissibility. *Id.; United States v. White,* 569 F.2d 263, 266 (5th Cir.1978), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978). Likewise, evidence regarding a chain of custody does not affect admissibility, only the weight of the evidence. *United States v. Kubiak,* 704 F.2d 1545, 1552 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 163, 78 L.Ed.2d 149 (1983).

■ We hold that the overwhelming circumstantial evidence connecting Sarmiento-Perez with the cocaine admitted into evidence at trial demonstrates that the trial court did not abuse its discretion in admitting the cocaine. The failure of the government to persuade the trial court to admit the box and plastic bags was a matter that affected the credibility and weight of the government's alleged connection of the seized cocaine with the defendant. The defendant was free to argue to the jury that Government's Exhibit 1 was not entitled to much weight. However, the government's lack of success with the admission of the box and bags did not preclude the introduction of the cocaine.

■ Appellant's further contention that the evidence at trial was insufficient to support his convictions is also premised on his assertion that the government failed to link the defendant to the cocaine delivered to the DEA agents. Viewing the evidence and all reasonable inferences in the light most favorable to the government, a reasonable jury could find that the evidence establishes appellant's guilt beyond a reasonable doubt based on the evidence concerning the retrieval of a small box from appellant's car, the telephone calls and last

minute reduction of the quantity of drugs by someone other than Aguilar and Ybanez, appellant's false exculpatory statement shortly after the drug transaction, and the testimony of Kimberlin that appellant admitted his involvement in a drug transaction.

There being no error by the district court in admitting the cocaine into evidence and the evidence at trial being sufficient to sustain appellant's convictions, we

AFFIRM.