**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Carlos MASSUET,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Carlos Efrain TRUJILLO,
Defendant–Appellant.**

Nos. 87–5672, 87–5673.

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1988.

Decided June 30, 1988.

John L. Coble, Jeffrey L. Zimmer (Zimmer & Zimmer, Robert M. Leen; John Milton McDaniel, on brief) for defendants-appellants.

John F. DePue (Dept. of Justice, Margaret P. Currin, U.S. Attorney, Christine M. Dean, Asst. U.S. Atty., on brief) for plaintiff-appellee.

Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

John Carlos Massuet and Carlos Efrain Trujillo were tried and convicted of various drug charges after Customs officials thwarted their attempt to smuggle cocaine by aircraft into the United States. Massuet and Trujillo challenge several of the district court's rulings relating to the admissibility of evidence and claim that the district court improperly sentenced them following their convictions. We affirm the convictions and remand the case to the district court for resentencing on two counts.

I

Massuet was the pilot of a Cessna aircraft. Trujillo was his passenger. A Customs radar operator picked up their aircraft in the vicinity of Port-au-Prince, Haiti. Its apparent point of departure was Colombia. Customs pilots followed Massuet and Trujillo as they proceeded north along the eastern border of the United States. The surveilling pilots observed the Cessna maneuver erratically and alter its airspeed and altitude after it crossed the coastline in the vicinity of Wilmington, North Carolina. The Cessna flew over a dirt airstrip, then proceeded eastward over the ocean. At this point, one of its occupants began to discard documents and dark covered packages from the aircraft. A Customs pilot obtained the Cessna's tail number and signaled Massuet to land the aircraft. Massuet landed at New Hanover County, North Carolina Airport, where he and Trujillo were arrested and the Cessna seized.

A government witness testified that an arresting officer read Massuet and Trujillo *Miranda* warnings and then asked them questions about their backgrounds, which they answered. The two then refused to answer further questions.

A Customs pilot relayed to the Coast Guard the approximate coordinates where Massuet and Trujillo were seen discarding the packages and documents from their aircraft. The commanding officer of a

Coast Guard vessel, relying on his knowledge of the ocean's currents, conducted a search and recovered 49 brown covered packages from the ocean in a location approximately 2½ miles from where Massuet or Trujillo was seen discarding similar packages. The packages contained approximately $19,600,000 worth of cocaine. A drug detecting dog indicated a residual odor from the recent storage of unlawful drugs in the tail section of Massuet's aircraft. A search of the aircraft revealed an aerial map with marked coordinates corresponding to the dirt airstrip which Massuet and Trujillo flew over after entering North Carolina. Documents in the aircraft disclosed that the Cessna was registered in the United States.

Massuet and Trujillo were indicted for failing to comply with advance notification, arrival, and reporting requirements while piloting an aircraft containing narcotics, in violation of 19 U.S.C. § 1436, for aviation smuggling in violation of 19 U.S.C. § 1590 and attempted importation of cocaine in violation of 21 U.S.C. §§ 960 and 963. Count III charged that Massuet, a United States citizen on board an aircraft, knowingly and intentionally possessed with intent to distribute cocaine in violation of 21 U.S.C. §§ 959(b)(2) and 960. Count IV charged that Trujillo on board an aircraft registered in the United States knowingly and intentionally possessed cocaine with intent to distribute in violation of 21 U.S.C. §§ 959(b)(2) and 960.

Massuet and Trujillo moved to suppress the statements they made to Customs officials immediately after their arrest. The district court denied the motion. Customs agents testified that Massuet and Trujillo made the statements in question and that they refused to answer additional questions without consulting an attorney. The district court permitted the testimony but instructed the jury to "not take in any way against" Massuet and Trujillo the fact that they invoked their constitutional rights after their arrest. The court also overruled Massuet's and Trujillo's objection to the search of their aircraft and admitted the contents of the search, including the aerial map and the aircraft's registration doc-

uments. Finally, the court permitted testimony, over the defendants' objections, relating to the value of the cocaine seized and the effects of cocaine upon the human body.

Massuet was convicted on all counts, and Trujillo was convicted on all counts except the count alleging a violation of 19 U.S.C. § 1436, because he was not the pilot of the aircraft.

## II

Massuet and Trujillo challenge their convictions on several grounds. First, they maintain that the district court erred by allowing government witnesses to testify that they chose to remain silent and demanded an attorney after they were given *Miranda* warnings when they were arrested.

■ Prosecution witnesses should not have been permitted to testify over objection about the defendants' silence after receiving *Miranda* warnings. Drawing upon its precedents, the Supreme Court recently reiterated that "breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires." *Wainwright v. Greenfield*, 474 U.S. 284, 291, 106 S.Ct. 634, 638–39, 88 L.Ed.2d 623 (1986).

The government relies on *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), and similar cases to sustain admission of the testimony about the defendants' refusal to answer questions and their request for an attorney. But *Anderson* dealt with a situation quite different from this case. In *Anderson* the defendant gave a statement about his theft of a car after receiving *Miranda* warnings. On direct examination his version of the theft was inconsistent with his earlier statements. He was cross-examined about this discrepancy and asked why he had not told the arresting officers his present version of the theft. The Court held that the cross examination did not violate the Due Process Clause because "[t]he questions were not designed to draw meaning from silence, but to elicit an explanation for a

prior inconsistent statement." 447 U.S. at 409, 100 S.Ct. at 2182.

Here, in contrast, Massuet and Trujillo made no statement about the cocaine after they received *Miranda* warnings. Instead they gave background information about their roles in piloting the aircraft, their national origins, citizenship, and legal basis for being in the United States. Furthermore, they did not testify. The testimony about their silence was introduced during the government's case in chief. It is quite apparent that *Anderson* and its progeny do not support the government's argument that the testimony was admissible.

Nevertheless, applying the criteria that this court explained in *Williams v. Zahradnick*, 632 F.2d 353, 361–62 (4th Cir.1980), it is clear that the error was harmless. First and most importantly, it cannot be said that evidence of the defendants' silence was offered to impeach their testimony or to refute any exculpatory defense. Thus, this is quite different than the situation in *Wainwright* and *Zahradnick*, where the defendants were prejudiced by having their silence used against them to destroy their credibility. Applying the other *Zahradnick* criteria, it appears that the testimony about the defendants' silence was given on two isolated occasions and the prosecutor did not refer to it in closing argument. The district court gave the jury a firm curative instruction about not holding the defendants' exercise of their constitutional rights against them in any way. Overwhelming other evidence pointed to Massuet's and Trujillo's guilt.

■ Massuet and Trujillo also argue that the evidence of the aircraft's United States registry was obtained illegally and consequently their convictions for violating 21 U.S.C. § 959(b)(2) must be reversed. They claim that Customs officials acted unreasonably by conducting a warrantless search of the aircraft two days after seizing it.

The aircraft was legally seized. In *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985), the Court said:

[t]here is no requirement that a warrantless search of a vehicle occur contemporaneously with its lawful seizure.... A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify such a warrantless search. (citations omitted).

In addition, officers may conduct a warrantless search of a vehicle seized for forfeiture under 21 U.S.C. § 881(a) for carrying contraband. *United States v. $29,000 —United States Currency*, 745 F.2d 853, 856 (4th Cir.1984).

Massuet and Trujillo claim that the 49 packages containing cocaine were improperly admitted as evidence against them. They assert that the government made an insufficient showing that the cocaine was connected to them.

■ There was ample circumstantial evidence connecting the cocaine to Massuet and Trujillo. Customs pilots testified that they observed one of the two discarding very similar packages from the aircraft in a location near the area where the Coast Guard found the cocaine. A drug detecting dog alerted officials to the recent existence of illegal drugs in the rear of the aircraft. Physical evidence may be connected to a defendant through circumstantial evidence, *United States v. Sarmiento–Perez*, 724 F.2d 898, 900 (11th Cir.1984), and the quantum of proof that physical evidence is connected to a defendant "goes to the weight of the physical evidence rather than its admissibility." *United States v. Soto*, 591 F.2d 1091, 1099–1100 (5th Cir. 1979). The district court did not abuse its broad discretion conferred by Federal Rule of Evidence 403 when it admitted the evidence.

■ Finally, we reject Massuet's and Trujillo's claims that the district court erred by permitting testimony regarding the value of the cocaine seized and the effect of cocaine on the human body. The value of the cocaine was relevant to prove that Massuet and Trujillo intended to distribute the drug. *See United States v. Sheikh*, 654 F.2d 1057, 1067 (5th Cir.1981).

The evidence of the effect of cocaine was relevant to demonstrate that cocaine was a narcotic, and, in any event, the chemist's brief description of its effect was not prejudicial to Massuet and Trujillo because the other evidence against them was overwhelming.

### III

The government acknowledges that the district court lacked statutory authority to sentence Massuet and Trujillo for violating 21 U.S.C. § 959(b)(2). Section 959(b)(2) prohibits any United States citizen on any aircraft and any person on board an aircraft registered in the United States to "possess a controlled substance with intent to distribute." Section 960 of 21 U.S.C., the statute prescribing the sentence for a violation of section 959, however, appears only to apply to section 959(b)(1), which prohibits the manufacture and distribution of a controlled substance, not possession with intent to distribute. Thus, because Massuet, a United States citizen, and Trujillo, a person on an aircraft registered in the United States, were convicted of possession with intent to distribute, they correctly assert that they cannot be sentenced for violating section 959(b)(2).

Nevertheless, 21 U.S.C. § 841(a)(1) is virtually identical to section 959(b)(2) and includes a provision for sentencing in section 841(b). Section 841(a)(1) makes it unlawful for any person knowingly or intentionally to "possess with intent to ... distribute ... a controlled substance ..." anywhere the United States has jurisdiction. *See United States v. Arra*, 630 F.2d 836, 840 (1st Cir. 1980). The elements of the crime denounced in sections 959(b)(2) and 841(a)(1) are similar. The jurisdictional base of section 841(a)(1) is broad enough to encompass the jurisdictional base of section 959(b)(2).

The grand jury charged, in count III that Massuet and in count IV that Trujillo "did ... knowingly and intentionally possess with intent to distribute a ... controlled substance," in violation of section 959(b)(2). This language in the indictment was also a virtual recitation of section 841(a)(1). The district court charged the jury to find Mas-

suet and Trujillo guilty under counts III and IV if it concluded that they "possessed some controlled substance with the intent to distribute it" and they were "on board an aircraft ... registered in the United States." Thus, by convicting Massuet and Trujillo the jury found all of the elements and a jurisdictional base necessary to establish their guilt for violating section 841(a)(1) as well even though the indictment did not cite section 841(a)(1).

A similar situation arose in *Williams v. United States*, 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1897). In *Williams*, the defendant, a Treasury Department official, extorted one hundred dollars from a person of Chinese descent attempting to enter the United States. The government intentionally indicted Williams for violating section 3169 of the Revised Statutes upon the erroneous belief that his conduct was proscribed by that provision. The Supreme Court concluded that the statute under which Williams was indicted applied only to officers acting under the authority of revenue laws but declared that the indictment was valid because Williams's alleged conduct was prohibited by another statute, section 5481. The Court gave the following explanation of its ruling:

> It is said that these indictments were not returned under that statute, and that the above indorsement on the margin of each indictment shows that the District Attorney of the United States proceeded under other statutes that did not cover the case of extortion committed by a Chinese inspector under color of his office. It is wholly immaterial what statute was in the mind of the District Attorney when he drew the indictment, if the charges made are embraced by some statute in force. The indorsement on the margin of the indictment constitutes no part of the indictment and does not add to or weaken the legal force of its averments. We must look to the indictment itself, and if it properly charges an offence under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the

offence charged was covered by a different statute.

168 U.S. at 389. In dicta, the Court indicated that the proper procedure for dealing with the problem of the erroneously cited statute would be to remand the case for resentencing under the proper statute. 168 U.S. at 389.

Rule 7(c)(3) of the Federal Rules of Criminal Procedure has adopted the reasoning of the Supreme Court in *Williams*. The rule provides that "[e]rror in the citation [of the statute which the defendant allegedly violated] or its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead the defendant to the defendant's prejudice." The Notes of the Advisory Committee to Rule 7(c)(3), citing *Williams,* make clear that "[t]he law at present regards citations to statutes or regulations as not a part of the indictment. A conviction may be sustained on the basis of a statute or regulation other than that cited." *See also United States v. Lipkis,* 770 F.2d 1447, 1452 (9th Cir.1985). Rule 7(c)(3) is perhaps most frequently cited to avoid dismissal of indictments because of clerical or inadvertent error. But as *Williams* teaches, the rule's scope is not limited to these causes of miscitation. In *Williams,* as here, the prosecutor intentionally cited an inappropriate statute, but the fortuity of an appropriate statute proscribing conduct charged in the indictment sustained the prosecution.

■ Imposing sentence on Massuet and Trujillo for violating section 841(a)(1) is not barred by *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), which prohibits a conviction for an offense different from the one specifically charged by the grand jury. In that case, the indictment charged that the defendant violated the Hobbs Act by impeding the flow of sand through interstate commerce to a Pennsylvania steel mill, but the government sought to establish the interstate commerce nexus by offering proof that the defendant's activity also impeded the future flow of steel from the mill to other states. The Supreme Court held that the government could not prove a violation of the Hobbs Act under the latter theory because the indictment charged the defendant with impeding the present flow of sand, not the future flow of steel, through interstate commerce and he was not "charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge" in an indictment with impeding the future flow of steel. 361 U.S. at 218, 80 S.Ct. at 273.

Massuet and Trujillo were indicted for possession of cocaine with intent to distribute. In contrast with the situation disclosed by *Stirone,* the government did not attempt to offer any evidence in support of any other charge. If the indictment had included the exact language which it did but cited section 841(a)(1) instead of section 959(b)(2) or even no statute at all, it would have been valid and any challenge against it would have failed. The indictment conformed to Federal Rule of Criminal Procedure 7(c)(1). It informed the defendants of the essential facts constituting the offense charged. Consequently, citation of section 959(b)(2) did not prejudice the defendants or invalidate the prosecution. *Williams,* 168 U.S. at 389, 18 S.Ct. at 94–95; Rule 7(c)(3).

Our opinion addresses the unusual situation where Congress has prohibited the same conduct in two statutes but specified punishment only in one. It is not to be read as authorizing the district court to pick and choose for the purpose of sentencing between two applicable statutes each with its own provision for punishment when the government has elected to prosecute on one of the two. *See United States v. Batchelder,* 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979).

We remand the case to the district court with directions to vacate those portions of the judgments that imposed sentences for violations of section 959(b)(2) and to conduct proceedings for resentencing the defendants pursuant to section 841(b) for violation of section 841(a)(1). In all other respects the judgments are affirmed.

AFFIRMED IN PART AND REMAND-ED.