974 F.2d 1333
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Luicito NERVIL, a/k/a Cesado, Defendant-Appellant.
 No. 91-5378.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 7, 1992
Decided: Sept. 15, 1992
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CR-89-112-G)
 Kenneth L. Weisman, Law Offices of Mishkin & Weisman, Miami, Florida, for Appellant.
 David Bernard Smith, Assistant United States Attorney/Senior Litigation Counsel, Greensboro, North Carolina, for Appellee.
 William C. Ingram, Floyd, Allen & Jacobs, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Luicito Nervil appeals his conviction on various drug charges. He claims that the trial court erred in admitting coconspirator statements and denying his motions for judgment of acquittal. Finding no error, we affirm the conviction.
 
 
 2
 A grand jury indicted Nervil for one count of conspiracy to possess with intent to manufacture and distribute cocaine base (crack), two counts of manufacturing crack, one count of possessing with intent to distribute crack, and one count of possessing with intent to manufacture crack. Joram Georges and George Palmer testified against Nervil at trial. Palmer had entered into a plea agreement in which he agreed to testify against all codefendants. Georges cooperated in order to receive a reduction in his sentence.
 
 
 3
 Georges testified that in February of 1989 he drove Nervil from Miami, Florida, to Durham, North Carolina, in Nervil's red Jetta Volkswagen and that Nervil told him he was going to Durham "to see Lindsay" for the purpose of "doing business." Georges testified that on this trip he saw Nervil pass a bag to Lindsay Saintil, another coconspirator. Georges noticed a grocery bag filled with money in the car on the return trip to Miami. He accompanied Nervil to Durham again about a month later. Georges and Nervil stayed in Durham about three weeks. During this trip Saintil brought money to the hotel room about six times, where he and Nervil counted it. Georges again observed a bag pass between the two men.
 
 
 4
 In March of 1989 Georges went with Saintil from Miami to Greensboro, North Carolina. He was arrested and two weeks later he was released on bond. During this trip Georges introduced Saintil to Palmer. Saintil and Palmer cooked cocaine into crack, and Georges helped bag it. When Georges returned to Miami, Nervil told him that Saintil and Palmer had been arrested and requested that he go to North Carolina to retrieve Saintil's automobile. Georges testified that he and Nervil were to split the money and drugs left in the car. During this trip Georges was again arrested. He told the arresting officers that Nervil supplied the cocaine and that they could find him in Durham at either the Red Roof Inn or in an apartment on Pilot Street. Nervil was not at either of these locations when Georges took the officers there.
 
 
 5
 Palmer testified that Georges introduced him to Saintil in April or May of 1989. Palmer showed Saintil places to distribute drugs while riding in the Jetta. At Saintil's request, Palmer recruited individuals to serve as street sellers. Saintil and Palmer cooked crack, which they distributed to the street sellers.
 
 
 6
 Saintil and Palmer later drove the Jetta to Durham to obtain more cocaine. Palmer testified that they were to meet Nervil at the Red Roof Inn. Palmer waited outside while Saintil went into the motel room and exited with a box he placed in the trunk of the car. According to Palmer, Saintil told Nervil that sales were better in Greensboro than in Durham. Palmer further testified that when he and Saintil returned to Greensboro Saintil took cocaine from the box, cooked it into crack, and bagged it for sale. One of the street sellers later sold it at a housing project.
 
 
 7
 On May 19, 1989, a police officer stopped the Jetta and arrested Palmer, Saintil, and one of the street sellers for possession with intent to distribute cocaine. A Drug Enforcement Administration agent later seized cocaine and cash from the automobile that Nervil had allegedly sent Georges to retrieve.
 
 
 8
 Other evidence introduced against Nervil at trial includes a repair receipt bearing Nervil's name that was found in the Jetta and a motel record showing that Luicito Nervil was registered at the Red Roof Inn between May 13 and May 17, 1989. Also, police officers seized a wallet from Georges at the time of his arrest which contained a slip of paper with a telephone number written on it. The business records of Southern Bell Telephone Company indicate that between May 11 and June 11, 1989, this number was subscribed to someone using the name Luicito Marcelos and corresponded to the residence of Saintil's girlfriend in Miami. Georges testified that he recognized this number as belonging to Nervil.
 
 
 9
 Nervil moved for a judgment of acquittal at the close of the government's evidence. The district court denied the motion. A jury then convicted Nervil of all charges but one of the manufacturing cocaine counts. Nervil appeals, contending that the trial court erred by allowing Georges and Palmer to testify as to statements made by him, Saintil, and each other without making factual findings as to their admissibility. He also claims that the court erred by denying his motion for judgment of acquittal.
 
 
 10
 Federal Rule of Evidence 801(d)(2)(E) provides:"A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Nervil asserts that a court may only consider evidence independent of the coconspirators' statements when determining whether a conspiracy exists for purposes of admitting these statements into evidence. Federal Rule of Evidence 104(a), however, provides that a court deciding whether to admit evidence "is not bound by the rules of evidence except those with respect to privileges." Fed. R. Evid. 104(a). A court may therefore consider hearsay statements in addition to independent evidence when determining whether the requirements of rule 801(d)(2)(E) have been met. Bourjaily v. United States, 483 U.S. 171, 178-81 (1987); United States v. Leavis, 853 F.2d 215, 219 (4th Cir. 1988).
 
 
 11
 The party offering the statement must prove the elements of rule 801(d)(2)(E) by a preponderance of the evidence. Bourjaily, 483 U.S. at 175. "Any findings of fact with respect to these questions are subject to a clearly erroneous standard of review, and a district court's decision to admit evidence under Rule 801(d)(2)(E) may only be overturned on appeal if it constituted an abuse of discretion." United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992) (citation omitted). See also Bourjaily, 483 U.S. at 181. A court may rely on circumstantial evidence when making its determination. United States v. Jones, 542 F.2d 186, 203 (4th Cir. 1976). See also United States v. Massuet, 851 F.2d 111, 114 (4th Cir. 1988). Applying these principles, we find that the district court did not abuse its discretion by admitting the coconspirators' statements into evidence. The motel registration, the car repair receipt, and much of Georges' testimony are independent evidence of the conspiracy. Combined with the statements of Nervil and the other coconspirators, the evidence clearly shows the existence of a drug conspiracy and Nervil's connection to it.
 
 
 12
 Nervil also asserts that the trial court erred by admitting the statements without making a factual finding as to their admissibility. We have not required a formal hearing, however, and"we do not believe that a trial judge is required to set out on the record his reasons for making this evidentiary ruling." Blevins, 960 F.2d at 1256. See also United States v. Hines, 717 F.2d 1481, 1488 (4th Cir. 1983). A court also need not explicitly state that it finds the existence of a conspiracy before admitting statements by coconspirators. Rather, the case's submission with instructions that the jury may consider the coconspirators' statements indicates that the court has made such a finding. United States v. Scott, 730 F.2d 143, 148-49 (4th Cir. 1984).
 
 
 13
 Nervil also argues that the district court erred in denying his motion for judgment of acquittal under Federal Rule of Criminal Procedure 29. The test for whether a verdict is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See also Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Roberts, 881 F.2d 95, 99 (4th Cir. 1989). "Once it has been shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992).
 
 
 14
 Viewing the evidence in the light most favorable to the government, we find that substantial evidence exists to support the verdict.
 
 AFFIRMED