34 F.3d 1067
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory PAYNE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Albrane BRUCE, Defendant-Appellant.
 Nos. 93-5933, 93-5934.
 United States Court of Appeals, Fourth Circuit.
 Argued July 20, 1994.
Decided September 1, 1994.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-93-75-F).
 Argued: Alan Dubois, Assistant Federal Public Defender, Raleigh, NC; John Rainey Parker, Jr., Clinton, DC. On brief: John A. Dusenbury, Jr., Assistant Federal Public Defender, Raleigh, NC, for Appellant Payne.
 Argued: David Paul Folmar, Jr., Special Assistant United States Attorney, Raleigh, NC. On brief: Janice McKenzie Cole, United States Attorney, Raleigh, NC, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before WILKINSON and WILKINS, Circuit Judges, and ANDERSON, United States District Judge for the District of South Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted Bruce of conspiracy to commit armed bank robbery in violation of 18 U.S.C. Sec. 371 and attempted armed bank robbery in violation of 18 U.S.C. Secs. 2113(a), 2113(d), and 2. Payne was also convicted by a jury of conspiracy and attempt, as well as use of a firearm during a crime of violence (18 U.S.C.Sec. 924(c)) and possession of a firearm by a convicted felon (18 U.S.C.Sec. 922(g)).
 
 
 2
 Appellants claim error by the district court on four grounds. First, the appellants claim that the district court erred in failing to order a mistrial after supposedly excluded identification testimony was brought before the jury. Second, Payne claims that the court erred in considering U.S.S.G. Sec. 2K2.4, comment. (n.2) in departing upwardly from the guidelines when determining his sentence. Payne claims that this comment was added to the guidelines after the crime was supposedly committed and that its consideration in his sentencing is an ex-post facto law. Third, Bruce claims the court erred in refusing to grant his Motion for Judgment of Acquittal pursuant to Fed.R.Crim.P. 29. Finally, Bruce claims that the court's admission into evidence of a black glove, found five days later in a trash can at a nearby restaurant, was in error. Finding no error on any of the four grounds, we affirm.
 
 I.
 
 3
 On the morning of April 16, 1993, Shirley Hobbs, an employee of the Central Carolina Bank in Erwin, North Carolina, was the first employee to arrive at work. As she approached the door, a stocky man wearing a black jacket, old blue jeans and a mask approached her with a drawn gun. Before the man reached her, she surreptitiously dropped the keys to the bank into the shrubbery. When the man reached her, he yelled at her to open the door. She told him that she did not have the keys, and he fled. She then ran to her husband's office, which was nearby, where they called the police and gave them a description of the robber.
 
 
 4
 Shortly thereafter, the police apprehended Payne, and called Mrs. Hobbs to come and identify him. Mrs. Hobbs was unable to identify him by face--she had never seen beneath his mask--but she did tell the police that he was of the same size and build as the man who had accosted her, and that he was wearing "the same jeans."
 
 
 5
 Before trial, the appellants made a motion to suppress Mrs. Hobbs identification of Payne. At the outset of the hearing, counsel for the government made a proffer of Mrs. Hobbs' testimony, saying that she could not identify Payne as the robber but that she had only said that he had a similar build and similar clothing. The court asked defense counsel whether he had any problem with that, and defense counsel stated that he did not, so long as no in-court identification was made.
 
 
 6
 At trial, Mrs. Hobbs' "identification" was alluded to three times by various witnesses. We will examine each in turn. First, when asked by the government about seeing Payne at the "showup" with the police, Mrs. Hobbs answered that "[h]e had a black T-shirt on at that time, he had on the jeans that the robber had on." Defense counsel objected, and the trial judge sustained the objection and admonished the witness to tell what she saw, without reaching any conclusions. Defense counsel did not move for a mistrial.
 
 
 7
 The second incident occurred when Mr. Giles, who drove Mrs. Hobbs to the "showup," was on the stand. When asked what happened after Mrs. Hobbs agreed to ride with him to the showup, Mr. Giles testified that "[w]e got in my truck, took the same route I did before and went down and Officer Hairr had got the suspect out of the car and he asked her if this was the man who did it and she said, 'yes.' " The defense objected, and the trial judge immediately gave the jury an instruction to disregard what the witness had said Mrs. Hobbs said. The judge then held a bench conference with the attorneys, after which he again admonished the jury to disregard anything the witness recounted about Mrs. Hobbs' ability to identify anyone. Defense counsel did not ask the court for a mistrial.
 
 
 8
 Finally, Officer Hairr himself took the stand, and when asked what Mrs. Hobbs had told him upon seeing the suspect at the "showup," he replied "She told me that she couldn't identify him by his face because she didn't see his face. She did tell me that was him." Again, the defense objected, and after a bench conference, the judge instructed the jury to "disregard [Officer Hairr's] statements as to what Ms. Hobbs said in deciding any issue in this case." Again, the defense did not move for a mistrial.
 
 
 9
 The defense now contends that the court should have directed a mistrial on its own motion. Review of the trial judge's failure to direct a mistrial on its own motion is limited to review for plain error. The plain error rule, Fed.R.Crim.P.52(b), must be applied cautiously, and should be invoked only in the exceptional case where, after reviewing the entire record, it appears that an error that seriously affects the fundamental fairness of the trial process has been committed, an error that could undermine the integrity or reputation of the public proceedings or otherwise result in a miscarriage of justice. See United States v. Mitchell, 1 F.3d 235 (4th Cir.1993).
 
 
 10
 Based on a review of the entire proceeding, we find this case is not one in which such a fundamental error has occurred. Any error that resulted from the witnesses' answers was cured by the trial judge's repeated instructions to the jury. What is more, the record as a whole contains overwhelming evidence of the appellants' guilt. Therefore it cannot be said that the fact that this testimony came before the jury had a probable impact on the jury's finding the appellants guilty. See United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.), cert. denied 459 U.S. 1018 (1982). We find no error in the district court's failure sua sponte to declare a mistrial.
 
 II.
 
 11
 Payne next assigns as error the district court's consideration of U.S.S.G. Sec. 2K2.4, comment. (n.2) in upwardly departing from the guideline range when imposing Mr. Payne's sentence. The Sentencing Guidelines were amended on November 1, 1993 and Application Note 2 to Section 2K2.4 was amended to include a notice to the court that, in certain circumstances, upward departure from the guideline range is permissible. Payne, who committed his crime before this amendment, claims the court's applying the advice contained in the amendment is a violation of the ex-post facto clause of Article I of the United States Constitution.
 
 
 12
 The ex-post facto clause prevents a court from sentencing an offender under a new law that is more onerous than the one in effect when the offense was committed. Miller v. Florida, 482 U.S. 423 (1987). The purpose of the ex-post facto clause is to give the citizenry fair notice of the consequences of their actions, and to permit individuals to rely on the meaning of the law until explicitly changed. Id. at 430. The ex-post facto clause applies to the federal sentencing guidelines. United States v. Morrow, 925 F.2d 779 (4th Cir.1991). Therefore, if comment 2, as amended, provides a more severe punishment for the accused than was applicable at the time his offense was committed, then it would be impermissible to consider it in his sentencing.
 
 
 13
 Comment 2 is not a new punishment. The trial judge was permitted, before the 1993 amendment to comment 2 of Section 2K2.4, to depart upwardly under the same circumstances. See United States v. Mapp, 990 F.2d 58, 61 (2d Cir.1993) (Amended commentary to U.S.S.G. considered only as clarification). Comment 2, then, was amended only to make the district court's choices more clear, it did not increase or in any way modify the available punishment. No ex-post facto violation exists where a change in the law "does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not effect matters of substance.' " Miller, 482 U.S. at 430 (citing Weaver v. Graham, 450 U.S. 24 (1981))". Here, the punishment provided for at the time of sentencing was no more severe than that in effect at the time of the crime. Thus, we find no ex-post facto law.
 
 III.
 
 14
 Bruce assigns as error the district court's failure to grant his Motion for Judgment of Acquittal pursuant to Fed.R.Crim.P. 29. In reviewing a Motion for Judgment of Acquittal, the trial court must decide whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Locklear, 24 F.3d 641, 644 (4th Cir.1994).
 
 
 15
 The evidence is sufficient to support the trial judge's denial of the Bruce's motion. Bruce traveled to North Carolina with the other conspirators, stayed in several hotels with them, went with them to "case" the bank, and even went along on the day of the robbery. The only purpose for the entire trip to North Carolina was to rob the bank. There is credible evidence from which a rational trier of fact could find that Bruce took possession of a bag containing bank robbery gear--such as a mask, gloves, duct tape, handcuffs, and a walkie-talkie--on the day of the attempted robbery. Also, the jury could reasonably have found that the fourth glove, found some days later stuffed into a trash can between the metal can and the liner at Sherry's Bakery, where Bruce was seen on the day of the attempted bank robbery, matched the three gloves found near the scene. This evidence directly ties Bruce to the scene of the crime. From all of the evidence introduced at the trial, viewed in the light most favorable to the government, a reasonable jury could have found Bruce's guilt to have been established beyond a reasonable doubt. Therefore, we find sufficient evidence to exist to support the trial court's ruling.
 
 IV.
 
 16
 Finally, Bruce assigns error to the trial court's admission into evidence of the black glove discovered by Ms. Jenny Smith in the bathroom of Sherry's Bakery. The glove was found by Ms. Smith five days after the attempted robbery, stuffed between the trash can and the trash can liner in the men's restroom at Sherry's Bakery. Bruce was seen at Sherry's Bakery on the day of the attempted robbery. Bruce complains that the prosecution established an insufficient chain of custody.
 
 
 17
 The chain of custody rule is primarily to satisfy the court that the item to be introduced is what it purports to be. United States v. Howard-Arias, 679 F.2d 363, 366 (4th Cir.1982). The rule is satisfied if the authentication testimony is sufficiently complete so as to convince the court that it is unlikely that the original item was exchanged or tampered with. Id. A "missing link" in the chain will not prevent the admission of physical evidence, so long as there is sufficient proof that the evidence is what it purports to be, i.e. the glove that was found at Sherry's Bakery. Id. This physical evidence may be connected to the defendant through circumstantial evidence alone. United States v. Massuet, 851 F.2d 111 (4th Cir.1988). Resolution of the question of admissibility rests with the sound discretion of the trial judge. Howard-Arias, 679 F.2d at 366.
 
 
 18
 Here, Ms. Smith testified at trial that the glove to be introduced looked like the glove she found at the bakery and handed over to Officer Fipps. Furthermore, Officer Fipps testified that, when Ms. Smith gave him the glove, he placed the glove into a bag and signed his name to the outside of the bag. Officer Fipps further testified that, when he retrieved the glove from the bag on the day of trial, the glove was in substantially the same condition as it had been when Ms. Smith gave it to him, and that it was in fact the same glove he had been given by Ms. Smith. This testimony relating to the chain of custody is adequate to satisfy a court that the evidence had not been tampered with. Furthermore, there is sufficient circumstantial evidence to link Bruce with the glove and the glove with the crime. The district court did not abuse its discretion in admitting the glove.
 
 AFFIRMED