**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                         No. 96-4258

GLENN L. WILLIAMS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                         No. 96-4309

KENNETH RANDAL WILLIAMS,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-95-136)

Submitted: February 19, 1997

Decided: April 23, 1997

Before ERVIN, HAMILTON, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John Louis Machado, Washington, D.C.; Douglas Wolcott Corkhill,
CALDWELL & CORKHILL, Raleigh, North Carolina, for Appel-

lants. Janice McKenzie Cole, United States Attorney, J. Frank Bradsher, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Glenn Williams ("Glenn")[1] and Kenneth Williams ("Kenneth") were convicted in a joint trial of conspiracy to possess crack cocaine with intent to distribute, 21 U.S.C. § 846 (1994). Glenn was sentenced to a term of 480 months imprisonment. He appeals his conviction and sentence and seeks release pending appeal and leave to file several pro se supplemental briefs and amendments to the briefs. Kenneth appeals his 188-month sentence. We grant Glenn leave to file the supplemental briefs but dismiss his bail motion as moot. We affirm Glenn's conviction and both sentences.

From May to July 1995, Glenn Williams lived in an apartment rented by Angel Shaw in Raleigh, North Carolina. Glenn paid Shaw to help transport cocaine from New Jersey to Raleigh hidden inside the spare tires of various cars. Glenn cooked the cocaine into crack at the apartment. Shaw's boyfriend, Alex Reynolds, also lived at the apartment and sold crack for Glenn at Shaw University where he was a student. Kenneth Williams arrived from New Jersey in early June to assist Glenn and also moved into Shaw's apartment. He subsequently made deliveries of crack to several street sellers. On July 6, 1995, Kenneth was arrested while attempting to make a delivery to Khalid Green. Afterward, Shaw's apartment was searched. Five tires, all of which had been cut, were in the bedroom occupied by Glenn

_____
[1] To avoid confusion we have referred to Appellants by their first names throughout the opinion.

and his girlfriend. A large amount of cash, plastic bags with cocaine residue, a cellular phone, and a pager were also found there. Another cellular phone and more cash were in the bathroom. An electronic scale and 15.9 grams of crack were in the room shared by Shaw and Reynolds. A plastic wrapper taped with duct tape was in the kitchen trash bin. Kenneth initially cooperated with authorities, but eventually decided to go to trial with Glenn. Shaw, Reynolds, and Green entered guilty pleas and testified at their trial.

I. <u>Glenn Williams</u>

Glenn first contends that plain error occurred when Detective Ray Moss testified about a statement Kenneth made after his arrest. <u>See United States v. Olano</u>, 507 U.S. 725, 734 (1993) (reversal for error not raised below requires error which is plain, affects substantial rights, and seriously affects fairness, integrity, or public reputation of judicial proceedings). Moss used a redacted version of the statement in which references to Glenn were replaced with references to "another individual." Glenn claims that this testimony violated his rights under the Confrontation Clause as articulated in <u>United States v. Bruton</u>, 391 U.S. 123, 126 (1968). However, in <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987), the Supreme Court held that a non-testifying codefendant's confession may be introduced when it has been redacted to eliminate the defendant's name and is combined with a limiting instruction, even though the statement is incriminating to the defendant when it is linked with other evidence introduced at trial.

It appears that no limiting instruction was given or requested in this case. Glenn's failure to request the instruction, together with the over-whelming evidence of his guilt, makes the absence of the instruction a harmless error. <u>See United States v. Locklear</u>, 24 F.3d 641, 647 (4th Cir. 1994).

Glenn also asserts that the district court abused its discretion in denying his motion for severance. Defendants who have been charged in the same conspiracy should generally be tried together. <u>United States v. Brooks</u>, 957 F.2d 1138, 1145 (4th Cir. 1992). A defendant moving for severance must establish that actual prejudice would

result from a joint trial, not merely that he would have a better chance
of acquittal in a separate trial. Id.

Glenn's motion for severance focused on the possible prejudice to him of evidence found in Angel Shaw's bedroom and during Kenneth's attempted delivery of 125 grams of crack to Green, evidence which could have been introduced against him even in a separate trial.

On appeal, he points out that Kenneth's statement would not have been admissible in a separate trial. A non-party's statement which is not in furtherance of a conspiracy is inadmissible hearsay. Fed. R. Evid. 81(d)(2). Nevertheless, Glenn has failed to show that the joint trial unduly prejudiced his defense. Therefore, we find that the district court did not abuse its discretion in denying severance.

Next, Glenn asserts that the district court committed reversible error in allowing Green to testify, without objection, that Glenn turned away and was silent after Green said to him at the police station, "We are both guilty. Face it." Glenn was in custody at the time and had received his Miranda**2** warning. He claims that introduction of this evidence violated his Fifth Amendment right to remain silent, citing principally Griffin v. California, 380 U.S. 609 (1965), and Doyle v. Ohio, 426 U.S. 610 (1976). Griffin forbids any comment by the prosecutor on a defendant's refusal to testify at trial. It is not applicable here because the government attorney did not comment on Glenn's decision not to testify. Doyle prohibits the use of a defendant's post-arrest, post-Miranda silence for impeachment purposes.

Even though Glenn did not testify, and the evidence of Glenn's silence in response to Green's statement was introduced in the government's case-in-chief, its admission was a violation of Glenn's Fifth Amendment right under Doyle. See United States v. Massuet, 851 F.2d 111, 113-14 (4th Cir. 1988). However, the error was harmless beyond a reasonable doubt because the evidence against Glenn was overwhelming. Chapman v. California, 386 U.S. 18, 24 (1967); Williams v. Zahradnick, 632 F.2d 353, 361-62 (4th Cir. 1980).

Glenn maintains that Green's testimony that he saw Glenn strike a crack dealer and his companion in a Bojangles restaurant during the time of the conspiracy should have been excluded under Fed. R. Crim. P. 404(b). Glenn's attorney made no objection to this testimony; therefore, its introduction is reviewed for plain error. Olano,

_____

**2 Miranda v. Arizona**, 384 U.S. 436 (1966).

507 U.S. at 734. Evidence of other crimes or bad acts committed by the defendant is excluded at trial under Rule 404(b), with certain exceptions, but evidence of acts intrinsic to the alleged crime is admissible. United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). Other criminal acts are intrinsic to the charged offense if they are inextricably intertwined with it, if they are part of a single criminal incident, or if the other acts are preliminary to the charged offense. Id.

Green did not say why Glenn struck the drug dealer. However, Green testified that the dealer sold crack in the same area where he did. Moreover, most of Kenneth's distributions were made at the Bojangles restaurant where the incident took place. It is a reasonable inference that the incident was related to Glenn's crack operation and was intrinsic evidence rather than evidence of an unrelated act. Consequently, admission of Green's testimony concerning the incident was not plain error.

Glenn claims that the district court erred in not making factual findings or permitting Glenn to present evidence in camera with respect to his pretrial motion to dismiss the indictment. This argument is without merit because Glenn did not allege in his motion that there were defects in the institution of the prosecution, apart from suggesting that there was insufficient evidence on which to charge him. The district court denied Glenn's motion, finding that such a ground was not appropriate for dismissal of an indictment. See Costello v. United States, 350 U.S. 359, 363 (1956) (indictment returned by a legally constituted grand jury may not be challenged on ground of inadequate or incompetent evidence). If Glenn believed there were defects in the institution of the prosecution, as he now alleges, it was his burden to describe them to the district court. By not doing so, he waived any defense or objection on this ground. Fed. R. Crim. P. 12(b)(1), (f). We therefore find that Glenn's motion to dismiss the indictment was properly denied.

Glenn next argues that, if the alleged errors he has raised are found to be harmless, their cumulative effect nevertheless entitles him to a new trial. In fact, he has identified only one harmless error: the admission of Green's testimony about his silence after arrest. This harmless error does not warrant a new trial.

5

Last, Glenn contends that he should have been held responsible only for the 125 grams of crack which were seized from Kenneth on July 6, 1995, and the 15 grams of crack which were seized from Shaw's apartment on the same evening. He argues that other amounts of crack were incorrectly attributed to him because information about the additional amounts came from unreliable co-defendants. The district court's factual determination of the amount of drugs attributable to a defendant for sentencing purposes is reviewable for clear error. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995). When the amount of drugs seized does not reflect the scale of the offense, the district court should approximate the quantity involved. USSG § 2D1.1, comment. (n.12).

The probation officer attributed at least 1.5 kilograms of crack to Glenn, based on statements and testimony by Shaw, Green, and Reynolds. At sentencing, the case agent testified that Shaw made five trips to New Jersey for the purpose of bringing back cocaine. After one trip, Shaw saw two packages of cocaine removed from the tire which together were the size of one kilogram of cocaine. A Jamaican named Vindo delivered cocaine to Glenn on two occasions. Reynolds saw a one-kilogram-size package removed from a tire delivered by Vindo. Detective Kennon testified that the wrapper bound with duct tape which was found in the kitchen trash would have contained a kilogram of cocaine if it were full. In response, Glenn testified, but did not discuss the amount of crack he had distributed. Instead, he asserted that he had been framed by Detective Kennon and that his co-defendants were lying about him to help themselves.

In estimating the amount of crack obtainable from cocaine powder, the sentencing court may assume that 100 grams of cocaine yield 88 grams of crack. United States v. Ricco, 52 F.3d 58, 63 (4th Cir.), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3247 (U.S. Oct. 2, 1995) (No. 95-5502). If Glenn transported only seven kilograms of cocaine (5 trips by Shaw, 2 trips by Vindo), 6.2 kilograms of crack could have been obtained. On the evidence presented, the district court did not clearly err in estimating that Glenn had cooked and distributed at least 1.5 kilograms of crack.

In two supplemental pro se briefs, with amendments, Glenn raises numerous additional claims of error. He asserts that he was arrested

6

and detained without probable cause, the indictment was flawed, the detective lied to the grand jury and at trial, the witnesses' testimony was inadmissible, the prosecutor engaged in several kinds of misconduct, his attorney was ineffective, the district court wrongly denied his request for different appointed counsel and a continuance and erred in not compelling disclosure of a confidential informant. Finally, he claims that his 480-month sentence was cruel and unusual. Some of these claims merely amplify issues which were raised in his main brief. The claim of ineffective assistance is not addressed here, because the record does not conclusively demonstrate ineffective assistance. See United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992) (claim of ineffective assistance not properly brought on direct appeal unless ineffectiveness conclusively appears in trial record). The other claims are without merit.

## II. Kenneth Williams

Kenneth contends that the district court failed to recognize its authority to depart downward on the grounds urged in his sentencing memorandum and in a psychological report prepared at the court's request. The district court made clear that it would prefer to impose a shorter sentence than called for under the guideline, but ultimately found that Kenneth's youth (he was nineteen at the time) was not a permissible ground for departure and that there were no other circumstances which warranted departure. When a court's decision not to depart is based on a perceived lack of legal authority, its decision is reviewable. United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992).

The psychologist suggested that, because of his youth, non-violent conduct, and lack of vocational skills, Kenneth would benefit from an environment which could provide structure, discipline, and guidance as well as the opportunity to learn vocational skills, and noted that he appeared motivated to make positive changes in his life. A sentence below the guideline range at the Federal Bureau of Prisons' Intensive Confinement Center was recommended; however, participants may not have a sentence of more than 12-30 months. Kenneth's guideline range was 188-235 months. At sentencing, defense counsel stressed

the psychologist's finding that Kenneth was socially immature and that he desired approval from an older male. He sought to portray him as unable to resist Glenn's influence, an argument the court rejected.

7

On appeal, Kenneth concedes that youth, USSG § 5H1.1, p.s., lack of youthful guidance, USSG § 5H1.12, p.s., lack of education and vocational skills, USSG § 5H1.2, p.s., and mental and emotional condition, USSG § 5H1.3, p.s., are not factors which would support a departure in a usual case. However, he claims that the combination of these factors, together with the psychologist's recommendation, took the case outside the heartland of ordinary cases and gave the court a basis for departing. See United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996) (discouraged factors not ordinarily relevant but may be basis for departure in exceptional cases). The district court did not find that youth or any of the other factors were present to an exceptional degree. Therefore, the court correctly held that it lacked authority to impose a sentence outside the guideline range.

Kenneth also contends that he should have received a 2-level decrease under USSG § 2D1.1(b)(4) because he met the criteria set out in USSG § 5C1.2. The issue was whether he had fulfilled the last requirement, that he truthfully provide to the government all information and evidence he had about the offense.

Detective Kennon testified at sentencing that the information Kenneth provided in two interviews after his arrest (before he decided to go to trial) was accurate but incomplete. He testified that Kenneth minimized his involvement by saying that he made only three or four deliveries of crack in the month that he lived with Glenn at Shaw's apartment, a month in which at least five kilograms of crack were sold. His statement was contradicted by Green, who said that he received crack several times from Kenneth and that Kenneth also made several deliveries to two others. Kenneth also failed to mention Angel Shaw's involvement in bringing cocaine from New Jersey, although Reynolds testified at trial that on one occasion he traveled to New Jersey with Shaw and Kenneth in a rented van which Shaw drove back to Raleigh after Glenn loaded cocaine into it. Kenneth argues that the government did not prove he knew Shaw was transporting cocaine for Glenn. However, because Kenneth's only purpose for coming to Raleigh was to help Glenn sell crack, the court was not clearly erroneous in finding, implicitly, that Kenneth knew Shaw was transporting cocaine for Glenn. Consequently, the district court

also
did not clearly err in finding that Kenneth had not told the police
all
he knew about the conspiracy.

Finally, we find that the district court did not clearly err when it summarily denied Kenneth's request for an acceptance of responsibility reduction. The adjustment is available to a defendant who truthfully admits all his criminal conduct, not to one who minimizes his conduct. USSG § 3E1.1, comment. (n.1(a)). The adjustment may be given to a defendant who goes to trial only in rare cases where the defendant intends to preserve issues unrelated to factual guilt. USSG § 3E1.1, comment. (n.2). This is not such a case.

Accordingly, we grant Glenn Williams leave to file his supplemental briefs and amendments and affirm his conviction and sentence. We dismiss as moot his motion for release pending appeal. Kenneth Williams' sentence is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9