**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**Stephen Clarence McKINNON,**
**Defendant-Appellant.**

**No. 28196.**

United States Court of Appeals,
Fifth Circuit.

May 5, 1970.

W. Paul Thompson, DeFuniak Springs, Fla., for defendant-appellant.

William Stafford, U. S. Atty., Stewart J. Carrouth, Clinton Ashmore, Asst. U. S. Attys., Tallahassee, Fla., for plaintiff-appellee.

Before PHILLIPS,* BELL and SIMPSON, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

McKinnon was charged by an indictment with possessing and transporting distilled spirits, the immediate containers of which did not have affixed thereto tax stamps, as required by § 5205(a)(2) of the Internal Revenue Code (26 U.S.C.A. § 5205(a)(2)).

From a judgment and sentence on a jury verdict of guilty, McKinnon has appealed.

At the close of the Government's case and after it had rested, McKinnon rested without offering any evidence in his own behalf.

There is no substantial dispute as to the facts.

On August 11, 1968, Charles W. Wilkerson and Walker Caswell, who then were and for more than 15 years theretofore had been Deputy Sheriffs of Walton County, Florida, were patrolling State Highway 83, north of DeFuniak Springs, Florida. They received a message that there had been an accident on such highway, just north of DeFuniak Springs. They were then about 15 miles north of the place of the accident and were traveling northerly. They immediately turned around and traveled to the place of the accident, which was about seven-tenths of a mile north of DeFuniak Springs. There had been a collision between a 1958 two-tone, red and white Ford and another automobile. When they arrived at the scene, the Ford was located crosswise on the highway and blocked the right lane and part of the left lane of the highway. It was so badly wrecked it could not be moved by its own power.

* Of the Tenth Circuit, sitting by designation.

McKinnon was at the scene of the accident, and when the deputies arrived he was standing at the driver's side of the Ford. The deputies learned that the occupant of the other automobile had been taken by ambulance to the hospital. They proceeded to direct traffic around the partially blocked highway until Burton W. Wilson, a State Trooper of the Florida Highway Patrol, arrived at the scene of the accident. After a short time had elapsed, Wilson arrived.

About four months prior to the accident, the Sheriff of Walton County, after having had custody of the Ford for approximately one year, turned it over to McKinnon.

The deputies knew the Ford well and were able to identify it. They had seen McKinnon driving it a number of times prior to the accident and after it was turned over to him by the sheriff.

Trooper Wilson had known McKinnon for about two and one-half years prior to the accident, knew the Ford and was able to recognize it, and had seen McKinnon driving it at least 12 times prior to the accident.

Moonshine whiskey has a distinctive odor, different from any other kind of whiskey, and the deputies, in the performance of their official duties, had many times before the date of the accident seen and smelled moonshine whiskey, and were able to recognize it by its distinctive odor. When the deputies walked around the back of the Ford they noticed a strong odor of moonshine whiskey emanating from the trunk thereof, and by their sense of smell knew that it was coming from moonshine whiskey in the trunk.

When the state trooper approached the Ford, he also noted a strong odor of moonshine whiskey emanating from it. He looked inside that portion of the automobile which was open to view, that is, the part occupied by the driver and passengers, and saw no moonshine whiskey. He determined that the strong odor of moonshine whiskey was coming from the trunk of the Ford.

Later the officers learned that a container had tipped over on its side and that the lid on such container was loose and part of the moonshine whiskey therein had leaked out on the covering on the bottom of the trunk of the car. That explains the reason the odor of the moonshine whiskey emanating from the trunk of the Ford was so very strong.

When the deputies determined that the odor coming from the trunk of the car was from moonshine whiskey therein, they decided to seize and hold the Ford in custody. Since it was so badly damaged it could not be removed on its own power, it was necessary to have it removed by a wrecker. The state trooper called the Rivard Chevrolet Garage in DeFuniak Springs and requested it to send out a wrecker to remove the Ford. It did so. When the wrecker arrived, the deputies instructed the driver thereof to tow the Ford to the garage and keep it in custody until the officers arrived at the garage, and stated it would be within a short time.

The Ford was towed to the garage and placed in a locked room.

After State Trooper Wilson finished his investigation at the scene of the accident, he turned McKinnon over to the deputies, who took McKinnon to the County Jail.

The state trooper went to the hospital in DeFuniak Springs to interview the occupant of the other automobile involved in the accident. After he completed his investigation at the hospital, he proceeded to the County Jail. The state trooper, accompanied by the two deputies, then took McKinnon to the Chevrolet Garage in his automobile. Deputy Wilkerson and the state trooper occupied the front seat, and Deputy Caswell and McKinnon occupied the rear seat. About 30 minutes elapsed between the time the wrecker left the scene of the accident with the Ford in tow and the time the officers arrived at the garage.

When they arrived at the garage, the state trooper and Wilkerson went with the wrecker driver to unlock the door of

the room in which the Ford had been placed. Deputy Caswell and McKinnon remained near where they got out of the state trooper's automobile. While they were standing there, McKinnon said to Caswell, "What you reckon they will do to me, there is four gallons in there."

The wrecker driver unlocked the door of the room where the Ford had been placed, and the officers and McKinnon entered the room. The state trooper asked the wrecker driver to get him a crowbar to pry open the trunk lid of the Ford. McKinnon stated that was not necessary, that the keys were on the floorboard of the Ford. The state trooper found the keys, partially covered with debris, under the front edge of the seat. He then unlocked the trunk of the Ford. There were four one-gallon containers in the trunk. Each contained moonshine whiskey, which the officers identified both by smell and taste. The containers had been placed in a cardboard box. Two of them had tipped over. The lid of one of the two containers was loose and part of its contents had leaked out on the covering of the floor of the trunk.

Neither Federal distilled spirits internal revenue stamps nor State of Florida excise liquor stamps were affixed to any of the containers.

At some time on August 11, 1968, a written instrument which contained a consent provision was signed by McKinnon by which he promised to appear at 10 a.m. on September 3, 1968, before a named judge, to answer to the charge specified in the instrument. The instrument contained a complaint, signed by State Trooper Wilson, which alleged with particularity that McKinnon, on August 11, 1968, at 4:35 p.m., committed the offense of failing to yield the right of way on State Road 83, seven miles north of DeFuniak Springs, in violation of a stated section of a Florida statute. The record does not disclose at what time on August 11, 1968, McKinnon signed the consent provision.

The deputies took the containers found in the Ford and the moonshine whiskey contained therein to the sheriff's office, and stored them in the evidence lockers in that office. They retained custody of the Ford.

On August 12, 1968, the containers and the moonshine whiskey contained therein were turned over to William C. Goodman, a Special Investigator for the Alcohol, Tobacco and Firearms Division of the United States Treasury Department, who was charged with the enforcement of the Internal Revenue Liquor Laws. He examined the containers, and determined by the smell and taste that they contained moonshine whiskey. He testified that none of the containers had Federal distilled spirits internal revenue stamps attached thereto.

McKinnon was formally charged by complaint filed before a United States Commissioner for the Northern District of Florida, which alleged that on August 11, 1968, at DeFuniak Springs, Walton County, Northern District of Florida, McKinnon "did unlawfully transport and possess distilled spirits, the immediate containers thereof not having stamps affixed thereto, as required by Section 5205(a) (2) Internal Revenue Code." A warrant for the arrest of McKinnon was issued on the complaint, and he was arrested on the warrant on August 20, 1968.

At the trial on the indictment, counsel for McKinnon objected to the admission of any testimony as to what the officers found in the trunk of the Ford, on the ground that it was obtained by an illegal search. He conceded that the officers had probable cause to arrest McKinnon at the scene of the accident for the possession of moonshine whiskey, in violation of the laws of Florida, and to search the Ford as an incident to that arrest. He contended, however, that when the officers seized the Ford, took it into their custody, and had it locked up in a room at the garage, the obtaining of a search warrant was necessary to a valid search, because, since the Ford was in the custody of the deputies, delaying the search for time sufficient to obtain a search warrant would not have

resulted in the loss or destruction of any evidence nor in anywise have prejudiced the State. The court overruled the objection, and the evidence was admitted.

Counsel for the United States contend that the state trooper had arrested McKinnon on a traffic charge and that McKinnon was still in his custody under such arrest; that he was present when the trunk of the Ford was opened, and that the officers had the right to search the automobile as an incident to a valid arrest.

Absent apprehension under a warrant for arrest, or formal words of arrest coupled with detention, it is sometimes difficult to determine whether the restraint of a person by officers amounts to an arrest. However, in the instant case we deem it unnecessary to determine whether, at the time the trunk of the Ford was opened and the containers of moonshine whiskey were removed therefrom by the deputy sheriffs, McKinnon was under arrest, either on the traffic charge or for possession and transportation of moonshine whiskey in violation of the laws of Florida. We reach that conclusion, because we are of the opinion that the opening of the trunk and the removal of the containers and moonshine whiskey by the deputies cannot be justified on the ground that their acts were incident to an arrest of McKinnon.

At the time the trunk was opened and the four containers and the moonshine whiskey therein were removed from the trunk, the Ford, the containers, and the moonshine whiskey had been seized by the deputies and were in their custody and subject to their control, and were in a room at the garage which could be locked in order to preserve that custody. And hence a delay in the opening of the trunk for a sufficient time to obtain a search warrant would not have created any substantial risk of the loss or destruction of any evidence of any violation of the laws of Florida or of the United States, or of any other prejudice to either of them. Only the officers and the wrecker driver had access to the Ford. We think it is reasonably certain that the wrecker driver would not have removed or destroyed such evidence. The presumption is that he would have faithfully performed his duties as bailee, and there is nothing in the record to indicate the contrary.

Assuming, but not deciding, that McKinnon was under arrest at the time the trunk was opened, we conclude that a search of the trunk without a warrant could not be upheld as legal on the ground that it was incident to a lawful arrest.[1]

However, for reasons we shall now undertake to state, we are of the opinion that the deputy sheriffs had authority, under the provisions of the Florida statutes with respect to alcoholic beverages, to seize and hold in their custody the Ford and the containers and the moonshine whiskey therein, and remove the containers and moonshine whiskey and place them in the evidence lockers in the sheriff's office, where they could be more safely kept.

F.S.A. § 562.35 in part here pertinent provides:

"Every vehicle, * * * used in the transportation or removal of or for the deposit or concealment of * * * any moonshine whiskey, * * * may be seized and forfeited subject to the provisions of § 562.27(4)."

F.S.A. § 562.34 in part here pertinent provides:

"(1) It shall be unlawful for any person to have in his possession, custody or control any cans, jugs, jars, bottles, vessels or any other type containers which are being used, * * * to bottle or package alcoholic

---

1. The conclusion we have reached is fully supported by Preston v. United States, 376 U.S. 364, 367–368, 84 S.Ct. 881, 11 L.Ed.2d 777, and the recent decision of this court in United States v. Davis, 5 Cir., 423 F.2d 974.

beverages containing more than one per cent of alcohol by weight;
* * *.

* * * * * *

"(6) Any such cans, jugs, jars, bottles, vessels or any other type container found in the possession, custody or control of any person which are being used * * * in violation of this section, shall be seized by the director or any employee of the state beverage department, sheriffs or deputy sheriffs and shall be forfeited to the state."

F.S.A. § 562.27(4) in part here pertinent provides:

"(4) * * * any alcoholic beverage together with all personal property used to facilitate the manufacture or production of the alcoholic beverage or to facilitate the violation of the alcoholic beverage control laws of this state or the United States may be seized by the director or any employee of the state beverage department or by any sheriff or deputy sheriff and shall be forfeited to the state."

F.S.A. § 562.15 in part here pertinent provides: .

"It is unlawful for any person to own or possess within this state any alcoholic beverage containing more than one per cent of alcohol by weight, unless the immediate container of such beverage shall have affixed to it the Florida excise liquor stamp required to be affixed for beverages of like alcohol content. * * *"

Here, the deputy sheriffs knew there was moonshine whiskey in the trunk of the Ford and that the Ford, at the time of the accident, was being unlawfully used to transport such moonshine whiskey. It was a fact well known to the deputy sheriffs that moonshine whiskey is the product of illicit distilling; that it contains more than one per cent of alcohol by weight, and that the makers, processors, transporters, and sellers thereof, for obvious reasons, do not affix Florida excise liquor stamps to the containers of moonshine whiskey. That fact was recognized by the Florida legislature when, in enacting laws respecting alcoholic beverages, it treated moonshine whiskey as an illegal product and as contraband. See F.S.A. § 562.27(6) and § 562.35.

 We hold that the deputy sheriffs had authority, under the laws of Florida and the facts within their knowledge, to seize the Ford, the containers, and the contraband moonshine whiskey therein, and to hold them in custody for forfeiture to the State; and that they were authorized to remove the containers and the moonshine whiskey therein to the evidence lockers in the sheriff's office to insure their safekeeping under such custody. The record indicates that was the basis of the trial court's ruling.

The judgment is affirmed.