UNITED STATES of America,
Plaintiff–Appellee,

v.

Maurice A. BIZZELL, Defendant–
Appellant.

No. 92–5778.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 27, 1993.

Decided March 28, 1994.

**ARGUED:** Jerome Patrick Aquino, Alexandria, VA, for appellant. David Alan Ring, Special Asst. U.S. Atty., Alexandria, VA, for appellee. **ON BRIEF:** Kenneth E. Melson, U.S. Atty., Alexandria, VA, for appellee.

Before NIEMEYER and HAMILTON, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

FRANK A. KAUFMAN, Senior District Judge:

Appellant in the within case asserts that the warrantless search of a gym bag found in his automobile a few days after his arrest for trafficking in narcotics violated his Fourth Amendment right against unreasonable searches. The district court denied appellant's motion to suppress the evidence discovered in the search, and appellant was convicted of distribution of five grams or more of "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) (1981). We affirm the trial court's denial of appellant's motion to suppress on the ground that it took place after a lawful seizure pursuant to 21 U.S.C. § 881 (1981 & Supp.1993).

## I.

On December 19, 1991, according to the unrefuted testimony of an undercover Alexandria, Virginia, police detective and of a Virginia state police officer, appellant Bizzell sold to the Alexandria detective approximately 25 grams of "crack" cocaine for $1,200 at a Howard Johnson's restaurant in Fairfax County, Virginia. Bizzell arrived at the site of that sale in a silver 1989 Mitsubishi Montero with Maryland license plates bearing the identification "ZFJ–943." Subsequent to that sale, appellant, by his own admission, conversed several times with the Alexandria detective with regard to possible future sales, none of which were ever consummated.

On March 19, 1992, officers of several law-enforcement agencies, working together, arrested appellant in Norfolk, Virginia, on the campus of Norfolk State University, which appellant attended. The officers possessed a lawful arrest warrant for appellant, seemingly based largely or entirely upon the December 19, 1991, transaction. At the time of the March 19, 1992, arrest, the arresting officers seized appellant's vehicle—the same Montero which the latter had driven to the December 19, 1991, sale—and one of them conducted a cursory search of its interior, looking principally for weapons, narcotics or cash. The car then was taken to a police headquarters. Several days later, on March 24, 1992, a Virginia state police officer again searched the vehicle, this time more thoroughly. The government contends that that search represented a lawful inventory search.

During the March 24, 1992, inspection, the Virginia state police officer opened a gym bag which he found lying in the car and seized several items which were in the bag as evidence of drug-dealing. These included a bill for charges associated with the use of a pager or beeper device; a pocket calendar with names, addresses, telephone numbers, and beeper numbers; a spiral notebook; and a folder. The officer leafed through the notebook and folder at the time of the search purportedly in order to ascertain whether any property, such as money or credit cards, had been placed between the pages. In the course of his examination, the officer noticed written references to various drug-dealing "crews" and several drafts of an essay penned by appellant in which he debates with himself whether to continue his "life of crime" and decides, in the essay at least, to reform his ways.

Prior to trial, appellant moved to suppress the evidence seized from his car, particularly the writings in his notebook and folder. After a hearing, United States District Judge T.S. Ellis, III, denied the motion. Judge Ellis noted two possible grounds for his ruling. First, the search conducted by the Virginia state officer on March 24, 1992, was "an inventory search and not an investigatory search.... An inventory search is not rendered invalid just because an officer with a sharp eye manages to see in the course of conducting an inventory search that there are items of evidence there."[1] Second, the search was proper in any event, as it occurred after a lawful seizure pursuant to 21 U.S.C. § 881. Judge Ellis seemingly concluded that both grounds alternatively supported his ruling.[2] During a jury trial presided over by Judge Ellis, the evidence discovered in the gym bag was admitted, and appellant was convicted. On August 7, 1992, appellant was sentenced to 108 months in confinement. Appellant timely filed his notice of appeal.

## II.

21 U.S.C. § 881(a) (1981 and Supp.1993) provides in pertinent part:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

1. The record raises the possibility that the March 24, 1992, inspection may have been more than an inventory search and, in fact, may have been an investigative search. However, Judge Ellis's determination that an inventory search took place on March 24 would seem factually supported by the evidence and in accord with the application of correct legal standards. *See* note 5, *infra*, concerning the possible relevance of the investigative-inventory distinction.

2. The record in this case indicates that the police department procedures pursuant to which the March 24, 1992, search was conducted may not have been written, but apparently were standardized, and that the search itself was implemented according to the searching officer's understanding of oral instructions from his superiors concerning those procedures. Whether or not such a search, conducted pursuant only to oral as opposed to written guidelines, is valid under *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); and *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), raises a question which three other circuits, in the context of the specific facts before them, have answered affirmatively. *See United States v. Walker*, 931 F.2d 1066 (5th Cir.1991); *United States v. Frank*, 864 F.2d 992 (3d Cir.1988), *cert. denied*, 490 U.S. 1095, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989); *United States v. Feldman*, 788 F.2d 544 (9th Cir.1986), *cert. denied*, 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). We do not need to reach, and do not reach, that question in this case, since the challenged search is valid in any event under 21 U.S.C. § 881.

. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [a controlled substance].

"Seizure of a car subject to forfeiture may be made without process when the seizure is incident to an arrest, 21 U.S.C. § 881(b)(1), or when the Attorney General has probable cause to believe that it has been used in violation of the laws pertaining to controlled substances." *United States v. $29,000–U.S. Currency*, 745 F.2d 853, 855–56 (4th Cir. 1984).[3]

 Furthermore, 21 U.S.C. § 881(h) (Supp.1993)[4] states as follows:

(h) Vesting of title in United States

All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

In interpreting certain of those sections of § 881 in *$29,000–U.S. Currency*, Judge Butzner wrote that "[t]he right to search a car subject to forfeiture exists even though police do not actually seize it" and that "searches of [defendant's] car leading to the discovery of the $29,000 [during a search for marijuana] were valid because the car was subject to forfeiture and could be seized without process." *$29,000–U.S. Currency*, 745 F.2d at 856; *see also United States v. Massuet*, 851 F.2d 111, 114 (4th Cir.1988), *cert. denied, Trujillo v. United States*, 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 776 (1989).[5]

---

**3.** 21 U.S.C. § 881(b)(1) and (4) state as follows:

Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process ..., except that seizure without such process may be made when—

(1) the seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

.... [or]

(4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

**4.** § 881(h) was added to the statute as part of the 1984 Amendments embodied in Pub.L. No. 98–473, § 306(f).

**5.** Neither *$29,000–U.S. Currency* nor *Massuet* differentiates between investigative and inventory searches for purposes of determining the validity of a search incident to a seizure under the forfeiture statute. In both of those cases, police were searching for contraband—illegal drugs. In *$29,000–U.S. Currency*, they discovered cash and marijuana, *see $29,000–U.S. Currency*, 745 F.2d at 856, and in *Massuet* the police found cocaine. *See Massuet*, 851 F.2d at 114. The search in *Massuet* seems clearly to have been investigative, and the search in *$29,000–U.S. Currency* was arguably investigative. The Third Circuit has in one instance refused to uphold a warrantless search incident to forfeiture, permitting only "*noninvestigative* inventory searches," pursuant to a state forfeiture statutory scheme which possessed "no counterpart to 21 U.S.C. § 881(h)." *United States v. Salmon*, 944 F.2d 1106, 1122–23 (3d Cir.1991), *cert. denied, Washington v. United States*, —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). Because of § 881(h), the

court in *Salmon* indicated that "it may be that a person whose vehicle is seized pursuant to federal forfeiture law loses any legitimate expectation of privacy in the vehicle immediately upon its seizure." *Id.* at 1122–23. In any event, that court expressly chose to adopt in *Salmon* what it termed the "narro[w]" view of *Cooper v. California*, 386 U.S. 58, 61, 87 S.Ct. 788, 790–91, 17 L.Ed.2d 730 (1967), and authorized only inventory, not investigative, warrantless searches of seized automobiles. *Salmon*, 944 F.2d at 1122. (The Supreme Court in *Cooper*, 386 U.S. at 61–62, 87 S.Ct. at 790–91, upheld the search of a car seized by California police under color of a state forfeiture statute, without specifying what type of search is permitted.).

In *$29,000–U.S. Currency*, 745 F.2d at 856 n. 5, Judge Butzner cited to eight cases allowing searches pursuant to § 881 or somewhat comparable statutes. In six of those cases, investigative searches were seemingly involved. *See United States v. Kimak*, 624 F.2d 903, 905–6 (9th Cir. 1980); *United States v. Capra*, 501 F.2d 267, 280 (2d Cir.1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975); *United States v. Shye*, 473 F.2d 1061, 1064–66 (6th Cir.1973); *United States v. Edge*, 444 F.2d 1372, 1374–75 (7th Cir.), *cert. denied*, 404 U.S. 855, 92 S.Ct. 101, 30 L.Ed.2d 97 (1971); *United States v. Stout*, 434 F.2d 1264, 1266–67 (10th Cir.1970); and *United States v. McKinnon*, 426 F.2d 845, 847, 849–50 (5th Cir.1970), *cert. denied*, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970). In none of those cases did the courts refer to the type of search at issue or indicate any different treatment of investigative, as opposed to inventory, searches. Accordingly, the law in this circuit, as applicable to this case, would not appear to call for application of the Third Circuit's approach in *Salmon* even if the March 24, 1992,

In this case, appellant used his car to facilitate the December 1991 narcotics "sale" to an undercover detective. That act, amply supported by the testimony of that detective and of one other law-enforcement officer, clearly satisfies the "probable cause" requirement of § 881(b)(4), needed to seize the vehicle without process.[6] Moreover, the arrest of appellant pursuant to a valid arrest warrant properly subjects the car to seizure without process under § 881(b)(1) as well. Thus, prior to March 24, 1992, appellant lost his privacy interest in the automobile, pursuant to § 881(h), and it became subject to seizure under § 881(a). The fact that the law-enforcement officers waited several months from the time of the drug transaction until appellant's arrest to seize the vehicle does not impinge the validity of the seizure. *See United States v. Kemp*, 690 F.2d 397, 401–2 (4th Cir.1982).

Additionally, appellant's assertion that the government has failed to offer any evidence as to the authority used to seize the car at the time of appellant's arrest does not alter our analysis. In *Kemp*, Judge Young, sitting by designation, noted that "police officers do not wear signs telling under what statutory authority they are acting.... [T]his Court sees no reason that the seizure could not be justified under [any applicable] statute irrespective of which statute the government ultimately relied on for the civil forfeiture." *Id.* at 399 n. 1.

### III.

For the foregoing reasons, the decision of the district court to deny appellant's motion to suppress, and appellant's subsequent conviction in that court, are hereby

*AFFIRMED.*

---

search herein was investigative rather than inventory, which would not appear to be the case. *See* note 1, *supra.*

6. In a forfeiture proceeding after seizure, the government's "burden of proof" is governed by 19 U.S.C. § 1615 (1980 & Supp.1993). *United States v. Misc. Jewelry*, 667 F.Supp. 232, 237 (D.Md.1987), *aff'd,* 889 F.2d 1317 (4th Cir.1989). § 1615 provides that "probable cause shall be first shown [by the government] for the institution of such suit or action," after which the burden of proof shifts to the claimant contesting the forfeiture. 19 U.S.C. § 1615. "Under section 1615, the Government must initially demonstrate probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled

substance." *Misc. Jewelry,* 667 F.Supp. at 237–38.

"The Government has the initial burden of showing that there was probable cause to initiate the forfeiture action—that is, probable cause to believe that a substantial connection existed between the property to be forfeited and the criminal activity defined by the statute." ... The burden then shifts to the claimant to prove by a preponderance of the evidence that either the activities did not occur or that the claimant had no knowledge.

*United States v. 30.80 Acres,* 665 F.Supp. 422, 424 (M.D.N.C.1987) (quoting *United States v. Premises Known as 2639 Meetinghouse,* 633 F.Supp. 979, 986 (E.D.Pa.1986)), *aff'd,* 856 F.2d 675 (4th Cir.1988).