UNITED STATES of America

v.

Samuel NELSON

and

Warren Polston.

Criminal No. L–07–0203.

United States District Court,
D. Maryland.

Jan. 8, 2008.

720

Michael Clayton Hanlon, Rod J. Rosenstein, Office of the United States Attorney, Baltimore, MD, for United States of America.

J. Wyndal Gordon, The Law Office of J. Wyndal Gordon PA, Baltimore, MD, for Samuel Nelson.

## MEMORANDUM

BENSON EVERETT LEGG, Chief District Judge.

Defendants Samuel Nelson and Warren Polston are each charged with a single count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (2000). The indictment was returned on May 1, 2007. Now pending are the following pretrial motions:

(1) Polston's Motion to Dismiss the Indictment;

(2) Polston's Motion to Compel Co–Conspirator Proffer Pursuant to Rule 801(d)(2)(E);

(3) Nelson's Motion to Dismiss the Indictment and to Adopt Arguments Contained in Polston's Motion to Dismiss the Indictment;

(4) Nelson's Motion to Dismiss for Excessive Pre–Indictment Delay;

(5) Nelson's Motion to Compel Co–Conspirator Proffer Pursuant to Rule 801(d)(2)(E);

(6) Nelson's Motion to Suppress Physical Evidence;

(7) Nelson's Motion for Reconstruction of Evidence (or, in the alternative, to Strike the Use of Vacuum–Sealed Samples);

(8) Nelson's Motion for Discovery; and

(9) Nelson's Motion for Disclosure of Relevant Witness Statements.

The Court held a hearing on the Defendants' motions on December 13, 2007. The Government called one witness at the hearing, Special Agent Todd Edwards of the Drug Enforcement Administration (DEA). Neither Defendant called any witnesses, but both presented oral argument.[1]

Having considered the evidence and arguments of counsel, the Court is now ready to rule on the Defendants' motions. For the following reasons, the Court will, by separate Order, GRANT Nelson's Motion to Adopt Arguments Contained in Polston's Motion to Dismiss the Indictment. The remaining motions are DENIED.

## I. Background

Nelson and Polston are charged with conspiring, together with a group of confederates from Houston, Texas, to transport narcotics from Houston to Baltimore from January through May 2002. According to the Government, the Houston suppliers drove to Baltimore on four or five occasions during this period for the purpose of selling kilogram quantities of cocaine. The Government asserts that the suppliers sold cocaine to Nelson on each of these trips and that they also sold to Polston at least twice.

On May 15, 2002, three of the Houston suppliers were arrested by Baltimore County Police officers outside an apartment complex in Nottingham, Maryland. At the time of the arrests, the officers had placed the complex under surveillance in connection with an unrelated credit card fraud investigation. While conducting their surveillance, the officers observed the suppliers' vehicle arriving at the building,

---

1. In advance of the hearing, Defendant Nelson filed a Motion to Unseal the Application for Search Warrant (Docket No. 26) as well as a Motion to Sever (Docket No. 31). Both motions were withdrawn at the hearing.

followed by a white minivan. Although the minivan left the scene and never returned, the suppliers exited their vehicle and attempted to enter one of the building's apartments. They were then approached by the police.

In response to police questioning, one of the suppliers admitted that their vehicle contained narcotics. The officers then searched the vehicle and discovered approximately five kilograms of powder cocaine hidden in a secret compartment. The vehicle was seized and the three suppliers were arrested.

The Government continued to investigate the Houston suppliers after the May 15 arrests. According to the testimony of Special Agent Edwards, the DEA learned from cooperating witnesses that a man known as "Uncle Sam" had purchased cocaine from the suppliers in kilogram quantities on multiple occasions, and that he sometimes arrived to pick up the drugs in a white minivan. On at least one occasion, Uncle Sam was also observed driving a maroon BMW.

To discover Uncle Sam's true identity, the DEA reviewed the phone records of participants in the events leading up to the May 15 arrests. This inquiry led the Agents to Defendant Samuel Nelson. After identifying Nelson as a suspect, the DEA obtained his photograph from the Motor Vehicle Administration (MVA) and presented it, on separate occasions, to two of its cooperating witnesses.[2] Both witnesses positively identified Nelson as Uncle Sam.[3]

The DEA also obtained MVA records indicating that Nelson's wife owned a white Dodge minivan and a maroon BMW. According to Special Agent Edwards, this evidence was corroborated on multiple "drive-by" visits to Nelson's home, during which Edwards personally observed Nelson operating both vehicles. On the last of his visits, Edwards also discovered counterfeit U.S. currency in the trash outside Nelson's home.

Based on this information, the DEA and Secret Service obtained a warrant to search Nelson's residence. The warrant was executed on September 4, 2002. During the search, agents seized Nelson's minivan and BMW and placed the vehicles in forfeiture proceedings pursuant to 21 U.S.C. § 881.[4] Two days later, DEA analysts conducted ion vacuum scans on both vehicles. Particulate matter obtained from each of the vehicles tested positive for the presence of cocaine.[5]

Over the next few years, the Government continued to investigate the conspiracy involving Nelson and the Houston suppliers. Sometime in 2003, the Government obtained testimony from additional confidential informants with personal knowledge of the scheme. It was these informants who first identified Defendant Warren Polston as the "other" individual

---

**2.** According to the Government, the third cooperating witness had never met Nelson in person. *Govt's Mem.* at 7.

**3.** The DEA also interviewed a fourth cooperating witness, who testified that he/she had assisted Nelson in transporting cocaine from a different group of Houston suppliers in 2001. The witness, who had no personal knowledge of the events leading up to the May 2002 arrests, also identified Nelson as "Uncle Sam."

**4.** Section 881(a)(4) provides that vehicles are subject to forfeiture if "used, or intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances and related drug paraphernelia]."

**5.** On October 1, 2002, pursuant to standard administrative procedures, the DEA returned the minivan and BMW to the lending company that owned the lien on both vehicles.

who purchased cocaine from the Houston suppliers in early 2002.[6] *Govt's Mem.*, 9.

After identifying Polston as a potential participant in the conspiracy, the Government continued its efforts to prosecute additional suspects. According to evidence presented at the December 13th hearing, the last of the Government's cooperating witnesses was sentenced in June 2005. After these proceedings were concluded, a major Houston drug dealer with ties to the conspiracy was indicted in the Southern District of Texas in late 2006. Nelson and Polston were eventually indicted on May 1, 2007.

## II. Discussion

After reviewing the Defendants' motions in light of the arguments presented at the December 13th hearing, the Court hereby GRANTS Nelson's Motion to Adopt Arguments Contained in Polston's Motion to Dismiss the Indictment. The remaining motions are DENIED. Each is addressed in turn below.

### A. *Nelson's Motions for Discovery and Disclosure of Relevant Witness Statements:*

As an initial matter, the Court notes that Nelson's Motions for Discovery and Disclosure of Relevant Witness Statements have either been resolved or are currently being resolved by the Government pursuant to its continuing discovery obligations. Accordingly, Nelson's discovery motions are either premature or moot at this point in the proceedings. The motions will therefore be denied.

### B. *Polston's Motion to Dismiss the Indictment:*

Polston makes three arguments in support of his Motion to Dismiss the Indictment. We take up each of his claims below.

### i. *Insufficient Evidence*

■ Polston first contends that there is insufficient evidence that he participated in a conspiracy to distribute cocaine. According to Polston, the Government's evidence will at best reveal that he "was only a customer of the individuals who ran the conspiracy alleged in the indictment." *Mem. in Supp. of Polston's Mot. to Dismiss*, 4. Even if it is established that he purchased cocaine from the Houston suppliers, Polston argues that the Government is unable to prove that he "had knowledge of the overall conspiracy charged in this case or an intent to participate in it." *Id.* at 5.

■ To prove conspiracy to possess with intent to distribute cocaine, the Government must establish (1) an agreement to possess cocaine with intent to distribute; (2) that the defendant knew of the conspiracy; and (3) that the defendant knowingly and voluntarily became a part of the conspiracy. *See United States v. Wilson*, 135 F.3d 291, 306 (4th Cir.1998); *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir.1996) (en banc). "Once it is shown that a conspiracy exists, the evidence need only establish a slight connection between the defendant and the conspiracy to support [a] conviction." *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir.1992). "[A] defendant need not have knowledge of his co-conspirators, or of the details of the conspiracy, and may be convicted despite

---

**6.** Although two of the cooperating witnesses interviewed after the May 15, 2002 arrests informed the Government that the Houston suppliers sold cocaine to an individual named "Wren" or "Warren," neither of these informants provided further information implicating Defendant Polston.

having played only a minor role[ ]." *United States v. Strickland,* 245 F.3d 368, 385 (4th Cir.2001). As the Fourth Circuit has consistently recognized, "evidence of a buy-sell relationship," coupled with evidence concerning the quantity of drugs sold, is sufficient to sustain a conspiracy conviction. *See, e.g., United States v. Mills,* 995 F.2d 480, 485 (4th Cir.1993); *United States v. Nelson,* 237 Fed.Appx. 819, 2007 WL 2174596 (4th Cir.2007) (unpublished disposition).

In its filings with the Court and in arguments presented during the December 13th hearing, the Government has stated that it will present evidence that Polston purchased kilogram quantities of cocaine from the Houston suppliers on at least two occasions. *See, e.g., Govt's Mem.* at 11. This evidence would establish a buy-sell relationship between Polston and the Houston suppliers and also that Polston purchased "distribution quantities" of cocaine.[7] *Id.* at 13. Under settled Fourth Circuit law, such evidence is adequate on its own to support a conspiracy conviction.

The Government has also indicated that it will call three new cooperating witnesses at trial,[8] at least one of whom will testify that Nelson and Polston were present at the same meeting with Wilbert Sejuelas, one of two Houston drug dealers at the heart of the 2002 conspiracy. Such testimony would establish that Polston and Nelson had knowledge of one another *and* that they "purchased cocaine from the same group, during the same trips and under the same circumstances." *Id.* Although not necessary to prove a conspiracy in the Fourth Circuit, the Government's additional evidence provides further support for the conspiracy charged in the indictment. Accordingly, Polston's motion to dismiss on grounds of insufficient evidence is denied.

### ii. *Limitations*

■ Polston also contends that the indictment is barred by the statute of limitations. Pursuant to 18 U.S.C. § 3282, non-capital offenses are subject to a default five-year limitations period. In his motion to dismiss, Polston argues that the Government cannot establish that he participated in the charged conspiracy after mid-April of 2002. Because the indictment was not returned until May 1, 2007, Polston contends that the conspiracy charge against him is untimely.

■ In a conspiracy case such as this, the statute of limitations does not expire until five years after the last overt act occurring in furtherance of the conspiracy. *See United States v. Gregory,* 151 F.3d 1030 (4th Cir.1998); *Fiswick v. United States,* 329 U.S. 211, 216, 67 S.Ct. 224, 91 L.Ed. 196 (1946). "A defendant's membership in a conspiracy is presumed to continue until he withdraws from the conspiracy by affirmative action." *United States v. West,* 877 F.2d 281, 289 (4th Cir.1989). In order to establish withdrawal or abandonment, the defendant must show that he acted to "defeat or disavow the purpose of the conspiracy." "Mere cessation" of conduct in furtherance of the conspiracy is insufficient to make this showing. *United States v. Walker,* 796 F.2d 43, 49 (4th Cir.1986).

---

7. In support of this claim, the Government intends to present testimony "in the form of drug-trafficking experts who will testify that *kilograms* of cocaine are a *distribution,* not a personal use, quantity." *Id.* at 12 (emphasis original).

8. The Government entered this "proffer" at the Court's request during oral argument at the evidentiary hearing. It is discussed in further detail *infra,* in connection with the Defendants' Motions to Compel Co-Conspirator Proffer(s) pursuant to Rule 801(d)(2)(E).

Assuming, *arguendo*, that the Government is unable to establish that Polston actively participated in the conspiracy after mid-April of 2002, a reasonable factfinder could nonetheless conclude that he failed to withdraw from or abandon the conspiracy before the Houston suppliers were arrested.[9] At this point in the proceedings, Polston has failed to present evidence that he acted affirmatively to defeat or disavow the objectives of the conspiracy before the arrests took place. Absent such evidence, Polston would have remained part of the conspiracy until at least that date, i.e., May 15th, 2002. The present indictment was returned on May 1, 2007, less than five years after the arrests and therefore within the applicable statute of limitations. Accordingly, we reject Polston's argument that the indictment against him was untimely.

### iii. *Excessive Pre–Indictment Delay*

■ Polston finally argues that the conspiracy count should be dismissed due to excessive pre-indictment delay. According to Polston, the Government improperly gained a strategic advantage by waiting nearly four years after identifying him as a suspect to file its indictment. During this period, Polston states that he "experienced severe wounds from several bullet shots to his head[,] which [have] caused him to suffer severe and debilitating memory loss." *Mem. in Supp. of Polston's Mot. to Dismiss*, 6. As a result of his injuries, Polston asserts that he no longer recalls much of what happened during the pendency of the charged conspiracy and that he is "unable to provide information about those who might testify as to his rectitude[.]" *Id.* at 2. Accordingly, Polston argues that the Government's pre-indict-

ment delay amounts to a denial of due process. As we explain below, however, Polston's claims are insufficient to warrant dismissal of the indictment.

■ It is well established that "due process is not violated simply because the defendant is indicted after a substantial [ ] delay." *United States v. Stinson*, 594 F.2d 982, 984 (4th Cir.1979), *citing United States v. Lovasco*, 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). A constitutional violation does occur, however, "when the delay actually prejudices the conduct of the defense and the government has intentionally delayed to gain some tactical advantage over the defendant or to harass him." *Id.*, *citing United States v. Marion*, 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (emphasis supplied, internal quotation omitted). Whether a pre-indictment delay violates the Due Process Clause is determined on a case-by-case basis. *Howell v. Barker*, 904 F.2d 889 (4th Cir.1990).

■ Under the Fourth Circuit's iteration of the *Marion* test, a defendant seeking dismissal on grounds of pre-indictment delay must first show that he was actually prejudiced by the Government's delay. *See, e.g., Jones v. Angelone*, 94 F.3d 900, 904 (4th Cir.1996). In order to make this showing, the defendant must demonstrate that he has been "meaningfully impaired in his ability to defend against the [criminal] charges to such an extent that the disposition of the [ ] proceeding was likely affected." *Id.* at 907, *citing Marion*, 404 U.S. at 325–26, 92 S.Ct. 455 (internal quotation omitted). If this standard is met, the Court must balance the prejudice to the defendant against the Government's justification for the delay. *Jones*, 94 F.3d

---

9. Where the evidence of withdrawal or abandonment is ambiguous or in dispute, the issue is one for the jury. *See, e.g., United States v.*

*Urbanik*, 801 F.2d 692, 697 (4th Cir.1986); *United States v. Wooten*, 688 F.2d 941, 946 (4th Cir.1982).

at 904, *citing Howell v. Barker,* 904 F.2d 889, 895 (4th Cir.1990). "The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates fundamental conceptions of justice or the community's sense of fair play and decency." *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399 (4th Cir.1985).

Polston asserts that he was prejudiced by the Government's delay because he suffered acute memory loss as a result of the gunshot wounds he sustained in 2003. The case law clearly indicates, however, that the loss or impairment of memories does not amount to actual prejudice for purposes of the Due Process Clause, *United States v. Lynch,* 56 F.3d 62 (4th Cir. 1995),[10] even when caused by some kind of medical condition. *See, e.g., United States v. McDougal,* 133 F.3d 1110, 1113 (8th Cir.1998). We agree with this analysis. Whether Polston's loss of memory is the result of physical trauma (i.e., gunshot wounds) or simply the passage of time, it is insufficient to establish actual prejudice.

Even assuming Polston can demonstrate actual prejudice, the Government has articulated a sufficient justification for its delay in filing the indictment. At the December 13th hearing, the Government explained that its investigation of the charged conspiracy stretched into late 2006, when Houston drug dealer Alberto "Papi" Mosquera–Amari pled guilty to federal drug trafficking charges in the Southern District of Texas.[11] Weighing this explanation against Polston's assertion of prejudice, and mindful that Polston has

failed to submit evidence that the Government acted in bad faith, we conclude that the Government's continuing effort to prosecute participants in the conspiracy is precisely the kind of "investigative delay" held not to violate due process. *See Lovasco,* 431 U.S. at 795–96, 97 S.Ct. 2044; *Howell,* 904 F.2d at 894–95. Accordingly, Polston's motion to dismiss the indictment on grounds of excessive delay is denied.

In sum, Polston has failed to establish that dismissal is warranted on grounds of insufficient evidence, limitations, or excessive delay. His motion to dismiss the indictment will therefore be denied.[12]

### C. *Nelson's Motion to Dismiss for Excessive Pre–Indictment Delay:*

 Like Polston, Nelson asserts that the indictment against him should be dismissed on account of the Government's delay. Nelson's claim of prejudice, however, is based upon a different theory: according to Nelson, the Government's delay in filing the indictment has prevented him from conducting his own tests on the automobiles seized from his residence. Nelson also asserts that, as a result of the Government's delay, he is no longer able to procure phone records in support of his defense.

Neither of Nelson's claims is sufficient to establish actual prejudice. As an initial matter, Nelson remains able to inspect the ion scan samples obtained from his vehicles, and he may also cross-examine the DEA analysts who conducted the tests. Furthermore, Nelson will have ample op-

---

**10.** *Quoting United States v. Scott,* 795 F.2d 1245, 1249 (5th Cir.1986). *See also United States v. Wright,* 343 F.3d 849, 860 (6th Cir. 2003).

**11.** Polston and Nelson were indicted shortly afterwards, on May 1, 2007.

**12.** As explained above, the Court will GRANT Nelson's Motion to Adopt Arguments Contained in Polston's Motion to Dismiss. Because none of these arguments are sufficient to warrant dismissal of the indictment against Polston, however, they are similarly insufficient to warrant dismissal as to Nelson.

portunity to contest the probative value of the samples at trial.

In addition, Nelson has failed to present evidence that either the phone records or his vehicles would have contained exculpatory evidence, and we decline to speculate as to what may or may not have been discovered had the vehicles and/or phone records been preserved.[13] Accordingly, we cannot agree that Nelson's defense was not meaningfully impaired by the government's delay in filing the present indictment. Nelson's motion to dismiss on grounds of excessive delay is, therefore, denied.

D. *The Motions to Compel Co–Conspirator Proffers Pursuant to Rule 801(d)(2)(E):*

■ Both Defendants request the production of any co-conspirator statements that the Government intends to introduce at trial. According to the Defendants, such pretrial discovery is necessary to determine whether the statements are admissible pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.[14]

■ Although some circuits require a pretrial hearing to determine the admissibility of co-conspirator statements, *see, e.g., United States v. James,* 590 F.2d 575 (5th Cir.1979), ours is not among them. See *United States v. Hines,* 717 F.2d 1481 (4th Cir.1983) ("This Court ... does not require the *James* hearing.") "Instead, a trial judge retains the option to admit conditionally the declarations of co-conspirators before the conspiracy has been independently established, subject the subsequent fulfillment of that factual predicate." *Id., citing United States v. McCormick,* 565 F.2d 286, 289 (4th Cir. 1977).

Although not required to do so, the Court exercised its discretion at the December 13th hearing to request that the Government submit an abbreviated "proffer" of the evidence it intends to introduce at trial. In accordance with this request, the Government stated that it intends to present testimony from three additional informants. At least one of those informants is expected to testify that Polston and Nelson had knowledge of one another, and that they purchased cocaine from the Houston suppliers during the same trips and under the same circumstances. Such evidence is more than sufficient to lay the foundation for the admissibility of co-conspirator statements pursuant to Rule 801(d)(2)(E).

As a result of the Government's "proffer," both Defendants have obtained meaningful information concerning the statements that will be used against them at trial. Insofar as the Defendants seek additional discovery, neither the Federal Rules of Evidence nor Rule 16(b) of the Federal Rules of Criminal Procedure require such disclosure. So long as the Government complies with its Jencks Act, *Brady* and *Giglio* obligations, no further

---

**13.** As the case law makes clear, the Government was under no obligation to preserve the vehicles and/or phone records forever, just in case Nelson wanted to conduct his own inspections or tests. *See, e.g., Arizona v. Youngblood,* 488 U.S. 51, 54–55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.") On the record before us,

Nelson has provided no evidence suggesting that the DEA deliberately disposed of the vehicles and/or phone records in order to prejudice his defense. Accordingly, his motion to dismiss for excessive delay must fail.

**14.** Rule 801(d)(2)(E) provides that out of court statements by co-conspirators made during and in furtherance of the conspiracy are not hearsay.

measures are necessary. Accordingly, the Defendants' Motions to Compel are hereby denied.[15]

E. *Nelson's Motion to Suppress Physical Evidence:*

 Nelson contends that the search and seizure of his vehicles violated the Fourth Amendment, and that the ion scan samples obtained from the vehicles should therefore be suppressed. In support of this argument, Nelson points out that the warrant executed by the Government on September 4, 2002 authorized the search of his residence but made no reference to his automobiles. *See Mem. in Supp. of Nelson's Mot. to Suppress,* 2. By administratively seizing the vehicles, Nelson contends that the Government exceeded the scope of the warrant.

The Government concedes that it "did not have a warrant specifically for Nelson's vehicles," *Govt's Mem.,* 22,[16] but maintains that the seizure of the minivan and BMW can be justified on two alternative grounds. First, the Government contends that the DEA conducted a valid "warrantless seizure [ ] based on probable cause." *Id.* at 23. Second, the Government argues that the vehicles were forfeitable, and accordingly subject to seizure, pursuant to 21 U.S.C. § 881. Once the cars were properly seized, the Government asserts that it was entitled to conduct a comprehensive warrantless search pending forfeiture proceedings. *Id.* 26–28. As explained below, we conclude that both of these arguments

justify the warrantless search and seizure of Nelson's automobiles.

 The Fourth Amendment generally requires that searches be conducted "pursuant to a warrant issued by an independent judicial officer." *United States v. Brookins,* 345 F.3d 231, 235 n. 4 (4th Cir. 2003), *quoting California v. Carney,* 471 U.S. 386, 390, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). Under the "automobile exception" to the this requirement, however, law enforcement agents may search a vehicle without a warrant "if [the vehicle] is readily mobile and probable cause exists to believe that it contains contraband." *Id., citing Maryland v. Dyson,* 527 U.S. 465, 466, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999). *See also Pennsylvania v. Labron,* 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996). Though the concept of probable cause is not easily defined, the Supreme Court has described it as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

In this case, the Government had ample probable cause to believe that Nelson had used the minivan and BMW to transport cocaine. By way of review, the DEA obtained statements from four different confidential informants that an individual referred to as "Uncle Sam" had purchased distribution quantities of cocaine from two different groups of Houston suppliers.[17]

---

**15.** The Court notes, however, that any co-conspirator statements admitted at trial are subject to a motion to strike at the close of the Government's case. *See, e.g., Hines,* 717 F.2d at 1488. As discussed during the pre-trial conference on December 17, 2007, both Defendants will be granted a continuing objection to the admission of such statements if they so desire.

**16.** The Government does contend, however, that the warrant "gave the agents the right to be on the Nelson property[.]" *Id.*

**17.** Three of the DEA's cooperating witnesses had personal knowledge of the conspiracy charged in the indictment, and the fourth stated that he/she had assisted in transporting cocaine from a different group of Houston suppliers to Nelson in 2001.

Three of these informants stated that "Uncle Sam" frequently arrived to pick up his drugs in a white minivan, and one observed him driving a maroon BMW. When presented with Nelson's photograph, three of the informants positively identified him as "Uncle Sam." [18]

The informants' statements were corroborated by MVA records indicating that Nelson's wife did in fact own a white minivan and maroon BMW. In addition, Special Agent Edwards testified that he personally observed Nelson operating both vehicles during multiple "drive-by" visits to Nelson's home. Finally, two of the Baltimore County Police officers who arrested the Houston suppliers on May 15, 2002 specifically recalled observing a white minivan identical to Nelson's shortly before the arrests took place. *See Gov't's Mem.*, 25–26.

Viewed as a whole, this body of evidence provided the Government with probable cause to believe that Nelson had used the minivan and BMW in furtherance of drug-related activity, evidence of which might be recovered from the vehicles' interiors. In light of this evidence, we conclude that the Government acted lawfully in conducting a warrantless search and seizure of Nelson's automobiles.

The search and seizure of Nelson's vehicles was also a proper exercise of the DEA's investigative authority pending forfeiture proceedings. As set forth above, the DEA had probable cause to believe that the cars were used to facilitate the transportation of cocaine, rendering them "forfeitable" to the United States pursuant to 21 U.S.C. § 881(a)(4). In accordance with this authority, the DEA lawfully seized Nelson's vehicles and placed them in forfeiture proceedings. *See, e.g., United States v. Kemp,* 690 F.2d 397, 401 (4th

Cir.1982) (holding that the seizure need not be contemporaneous with the act giving rise to the forfeiture); *United States v. Melvin,* 05–4997, —— Fed.Appx. ——, 2007 WL 2046735 at *9 (4th Cir.2007). Once the vehicles were pending forfeiture, the DEA was authorized to conduct a full investigative search, including the ion vacuum scans Nelson seeks to suppress. *See, e.g., United States v. Bizzell,* 19 F.3d 1524, 1527 (4th Cir.1994); *United States v. Massuet,* 851 F.2d 111, 114 (4th Cir.1988); *United States v. $29,000–U.S. Currency,* 745 F.2d 853, 855–56 (4th Cir.1984).

In sum, the Government has articulated two independent justifications for the warrantless search and seizure of Nelson's minivan and BMW. Accordingly, the Court will DENY Nelson's Motion to Suppress the ion scan samples obtained from his automobiles.

### F. Nelson's Motion for Reconstruction of Evidence (or, in the alternative, to Strike the Use of Vacuum Sealed Samples):

■■■ Finally, Nelson argues that the ion scan samples should be suppressed because he did not have an opportunity to conduct his own testing and analysis before his vehicles were returned to the lienholder. We disagree. The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process[.]" *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). As explained in our analysis of Nelson's motion to dismiss, *supra,* Nelson has failed to demonstrate that the government deliberately disposed of the vehicles in order to deprive him of access to potentially exculpatory evidence. At the same time, the Government has provided evi-

---

**18.** The fourth informant had never met Nelson in person. *Gov't's Mem.* at 7.

 

dence that the vehicles were returned to the lienholders pursuant to standard forfeiture proceedings. *See Govt's Mem.*, 32; *Id.*, Ex. 4, 5. Absent some basis for imputing bad faith to the Government, we decline to impose "an undifferentiated and absolute duty to retain and [ ] preserve all material that might be of conceivable evidentiary significance." *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333. Accordingly, Nelson's motion to Strike the ion scan samples is hereby denied.

### III. Conclusion

For the foregoing reasons, Nelson's Motion to Adopt the Arguments Contained in Polston's Motion to Dismiss is GRANTED. The remaining motions are DENIED. A separate order follows.

It is so ORDERED.

### ORDER

For the reasons stated in the Memorandum of even date, the Court hereby:

(1) GRANTS Samuel Nelson's Motion to Adopt Arguments Contained in Polston's Motion to Dismiss;

(2) DENIES Warren Polson's Motion to Dismiss the Indictment;

(3) DENIES Polston's Motion to Compel Co–Conspirator Proffer Pursuant to Rule 801(d)(2)(E);

(4) DENIES Nelson's Motion to Dismiss for Excessive Pre–Indictment Delay;

(5) DENIES Nelson's Motion to Compel Co–Conspirator Proffer Pursuant to Rule 801(d)(2)(E);

(6) DENIES Nelson's Motion to Suppress Physical Evidence;

(7) DENIES Nelson's Motion for Discovery; and

(8) DENIES Nelson's Motion for Disclosure of Relevant Witness Statements.